JANICE SWEDEEN, A MINOR, BY ELIZABETH OLSON, HER GUARDIAN AD LITEM, v. JAMES WILMAR SWEDEEN. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOMINGTON, ILLINOIS, THIRD-PARTY DEFENDANT.

134 N. W. (2d) 871.

April 2, 1965—Nos. 39,009, 39,013.

*Robins, Davis & Lyons, S. Robins,* and *Stanley E. Karon,* for appellant plaintiff.

*Dablow & Johnson* and *John Dablow,* for appellant third-party plaintiff.

*Palmer, Hood, Crassweller & McCarthy,* for respondent.

MURPHY, JUSTICE.

This matter is before us on appeal from a denial of a motion for judgment notwithstanding the verdict or in the alternative for a new trial by plaintiff and third-party plaintiff. The trial court directed a verdict for third-party defendant. The issue turns on the sufficiency of the evidence to create a fact question for the jury as to whether defendant insurance company and its agent made false representations of material facts relating to coverage contained in a public liability policy sold to James Swedeen.

From the record it appears that on September 27, 1957, Swedeen was involved in an automobile accident while driving his 1957 Chevrolet automobile. As a result of this accident, a judgment was recovered against him by his sister Janice, who was a passenger in his car. Public liability insurance on his automobile was carried with the State Farm Mutual Automobile Insurance Company of Bloomington, Illinois. This company refused to defend or pay the judgment asserting that the risk was not covered by the terms of the policy. Swedeen, who will be referred to herein as plaintiff, then brought a separate third-party claim against the company, referred to herein as defendant. Janice intervened. There is no dispute as to the terms of the policy. Under the exclusionary provisions, it recites that the insurance does not apply under—

"(f) coverage A, (1) to any obligation for which the insured or his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; or (2) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

Plaintiff contends that he was induced to purchase the policy through the representations by defendant's agent that it contained no such exclusionary clause. From the record it appears that James Swedeen was 21 years old at the time of the accident, had completed the ninth grade in high school, and lived with his parents in Cambridge, Minnesota. He had been employed as a farm laborer, but at the time of the accident was engaged in construction work. Victor Nelson, the agent of defendant, resided in Cambridge and was well acquainted with plaintiff and his family. He had been an agent for defendant since 1949 and had completed its training program. Prior to purchasing the insurance through Nelson, plaintiff had carried insurance with Casualty Underwriters, Inc., of St. Paul. This policy, which was about to expire on April 24, 1957, did not include the household exclusion clause. About this time plaintiff purchased a new car, and on the suggestion of his mother went to see Nelson about insurance on it. The mother was prompted to recommend Nelson because of numerous advertisements she had heard and read to the effect that the State Farm Mutual Automobile Insurance Company provided better insurance coverage at lower rates and because of her acquaintance and friendship with Nelson. Swedeen told Nelson that he desired "full coverage" liability insurance and Nelson assured him that he could provide better insurance than he had before at a lower premium. Swedeen informed the agent that he needed "full coverage" insurance to protect his driver's license under the Safety Responsibility Act, and Nelson gave him literature on this subject. Nelson represented to him that he would give him the same or greater protection than he previously had. Swedeen did not apply at first, but returned to Nelson's office another time, and on assurance that he would be provided with broader coverage than he formerly had and at a lower premium, the application was completed and the full premium was paid. The insurance became effective on April 24, 1957.

As a basis for his assertion that he was fraudulently induced to purchase the insurance contract, plaintiff levels numerous claims and arguments against the insurance company. They range from charges of unethical business conduct, by way of loose and misleading advertising,

to actual fraud. He argues at some length that defendant, through its nationwide advertising campaign, has urged upon the public that its policies give to the insured greater protection at lower rates. He asserts that the company spends between two and three million dollars annually on advertising in national media, including magazines, radio, and television programs, and that such programs are participated in by nationally known entertainers, such as Red Barber and Jack Benny. In this advertising, defendant holds out that its policy "represents the *broadest* protection ever packed into a single State Farm automobile policy. Fifty-four valuable extra protection features available in one policy! And, *only* State Farm offers all of them." In the Red Barber program, the announcer states:

"It's a policy developed to meet the changing needs of the modern motorist like yourself. * * * This Star Features policy will provide you with unequaled protection from State Farm, world leader in automobile insurance."

In another television program, the announcer states:

"When you buy insurance, you buy *promises*.

"When you buy your *automobile* insurance from *State Farm Mutual* * * * you're buying promises from promise-*keepers* of long standing and broad reputation."

Plaintiff argues that if the defendant were selling goods or merchandise the advertising would become part of the contract and constitute both express and implied warranties of the fitness of the policies for the purpose of the protection which plaintiff hoped to get when he bought his policy.

While it may well be that the statements contained in the insurance company advertisements brought plaintiff to its agent and made him receptive to the assurances given, we must agree with the trial court that the representations contained in those advertisements were too general and indefinite to constitute actual misrepresentations of fact. Plaintiff would have us find in the advertisements a basis for applying the policy and principles enunciated by this court in product liability cases. Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670. However, the

assertions of plaintiff as to want of good taste or ethical propriety of defendant's advertising under the circumstances in this case are beyond the reach of judicial action. Nevertheless, the actual misrepresentations of fact alleged to have been made by defendant's agent may be viewed in the context of the advertising to which plaintiff was exposed. It would have a bearing on the issue of plaintiff's reliance upon the assurances given by the agent and the asserted negligence of plaintiff in failing to discover the presence of the exclusionary clause in the policy when it was delivered to him.

1. The precise issue presented is whether plaintiff was deceived by representations that the policy sold to him gave him the same or greater protection than he had under his former policy with Casualty Underwriters. In reviewing this issue we are controlled by the principle of law that if a person represents as true material facts susceptible of knowledge to one who relies and acts thereon to his injury, the one making the representations cannot defeat recovery by showing that he did not know his representations were false or that he believed them to be true. In Swanson v. Domning, 251 Minn. 110, 115, 86 N. W. (2d) 716, 720, we said:

"Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge.

\* \* \* \* \*

"\* \* \* It is not necessary that the statement be recklessly or carelessly made. It makes no difference how it is made if it is made as an affirmation of which defendant has knowledge and it is in fact untrue. The right of recovery \* \* \* is based on the fact that such statement, being untrue in fact, relied upon by the other party in entering into the transaction, has resulted in the loss to him which he should not be required to bear."

See, Hollerman v. F. H. Peavey & Co. 269 Minn. 221, 130 N. W. (2d) 534.

2. In considering the claim that the trial court erred in directing a

verdict for defendant, we are governed by those decisions which hold that a motion for a directed verdict should be granted only in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the evidence or contrary to the law in the case. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243; Van Tassel v. Patterson, 235 Minn. 152, 50 N. W. (2d) 113; Crea v. Wuellner, 235 Minn. 408, 51 N. W. (2d) 283. It is for the jury, not the court, to determine weight to be given to testimony and to decide what it proves. Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N. W. (2d) 641; Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. (2d) 496. A verdict should be directed only when it is plain that all reasonable men can draw but one conclusion. Where varying inferences may be drawn from the testimony, the case should be submitted to the jury. Sviggum v. Phillips, 217 Minn. 586, 15 N. W. (2d) 109; Olson v. Evert, 224 Minn. 528, 28 N. W. (2d) 753; Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717.

3. With these principles in mind, the evidence bearing upon the asserted misrepresentation may be considered. It appears from the record that when plaintiff applied for the insurance, he signed a printed application form prepared by defendant. Under the classification of "coverages," the application describes the protection sought:

"The insurance applied for consists of such coverages as are so indicated by specific premium charge or charges.

|  | MEMB. | PREMIUM |
|---|---|---|
| "A-B BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Limits 10/20/5 Thousand) | A | |
| Limits desired if other than 10/20/5 Thousand $20/40/5 Thousand | B 7.00 | 31.12 |
| "C MEDICAL PAYMENTS (Limits $500 per person) Limits desired if other than $500—$ | C xxxx | 2.50" |

The application which is part of the contract says nothing about exclusions or exceptions. The agent testified that it was his practice to explain to his clients the coverage they were getting, but to say nothing about the coverage they were not getting. He was aware that the State Farm policy contained the household exclusion and that if a member of the Sweedeen household was injured due to the driver's negligence, State Farm would neither defend nor satisfy any resultant judgment. He was also aware that plaintiff's driver's license would be revoked if a judgment rendered against him remained unsatisfied. When the policy was delivered to plaintiff, he was provided with a brochure containing the following instructions:

"WHO IS SPECIFICALLY PROTECTED BY THE POLICY
"As Drivers . . .

"YOU (the person whose name appears on the policy) and YOUR SPOUSE (husband or wife living in the same household) are protected under all coverages.

"ALL RELATIVES (such as children, parents, in-laws) living in your household are automatically protected under all coverages, whether they drive with or without your permission.

*   *   *   *   *

"coverages that pay for
"DAMAGE CAUSED *BY* THE CAR
"LIABILITY (Coverages A and B)

"1. Pays all damages that any person covered by the policy becomes legally obligated to pay because of (A) bodily injury to other persons, and (B) damage or destruction of other people's property caused by an accident arising out of the ownership, maintenance, or use of the insured car."

On the state of the record there was evidence from which the jury could find that under his previous policy with Casualty Underwriters plaintiff had full liability coverage which did not include the provision which excluded recovery by members of his family residing in the same household. The agent admitted that he knew that plaintiff's previous public liability insurance was with Casualty Underwriters. There was

evidence from which the jury could find that plaintiff wanted a policy which provided the same broad protection. The jury could also find from the record that plaintiff was persuaded not only by the company's advertising program, which painted an attractive picture of broad coverage at bargain prices, but by the representations and conduct of the agent that he would be provided with greater, rather than less, protection than he previously had. Moreover, the jury could consider from the evidence that the representations made by the company's agent were made with knowledge of the fact that the State Farm policy provided less protection than that provided by Casualty Underwriters; that the agent knew of this fact, or, having no knowledge of the truth or falsity of the representation, yet represented the fact to be true of his own knowledge. While the evidence is not strong, we are inclined to the view that the claims of plaintiff with reference to representations as to the extent of coverage go beyond a mere cry of fraud. It does not appear that the representations, acts, and conduct of the agent were too speculative or conjectural to be regarded as representations upon which reliance could be expected. It seems to us that under the circumstances plaintiff had a right to expect that the State Farm policy would give him protection to the same extent as that given by Casualty Underwriters, and that he had a right to assume the policy was such as he had applied for.

On the basis of the record, we feel that the agent's representation that the policy provided plaintiff with greater coverage than the former policy related to a material fact and constituted evidence of fraud as defined by our decisions. Fraudulent intent may be proved by showing that defendant knew his statements were false, or that, having no knowledge of their truth or falsity, he did not or could not believe them to be true; or that, having no knowledge of their truth or falsity, yet he represented them to be true of his own knowledge. Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138; Swanson v. Domning, *supra*; Thomas v. Murphy, 87 Minn. 358, 91 N. W. 1097; Hollerman v. F. H. Peavey & Co. 269 Minn. 221, 130 N. W. (2d) 534. It was said in the Thomas case (87 Minn. 361, 91 N. W. 1098) that—

"* * * if a party conceals a fact material to the transaction, and

peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated."

And, in Borzillo v. Thompson (D. C. Mun. App.) 57 A. (2d) 195, 197, the court declared:

"It is settled law, however, that a statement in a business transaction, which, while stating the truth as far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation; also that a statement containing a half truth may be as misleading as a statement wholly false and thus that a statement which contains only those matters which are favorable and omits all reference to those which are unfavorable is as much a false representation as if all the facts stated were untrue. Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, *he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure. A duty to speak may arise from partial disclosure; the speaker being under the duty of saying nothing, or to tell the whole truth. A statement literally true is actionable, if made to create an impression substantially false.*" (Italics supplied.)

Since the statement as to greater coverage induced plaintiff to purchase State Farm insurance, the test of materiality has been met. Griffin v. Farrier, 32 Minn. 474, 21 N. W. 553; Rien v. Cooper, 211 Minn. 517, 1 N. W. (2d) 847.[1]

4. Defendant asserts that plaintiff is foreclosed from recovery by reason of his failure to exercise the required standard of prudence and diligence in not examining the policy. In considering this point it should be noted that the defendant company by its instruction to its agents

---

[1]See, 8 Dunnell, Dig. (3 ed.) § 3818; Helvetia Copper Co. v. Hart-Parr Co. 137 Minn. 321, 163 N. W. 665; Dwinnell v. Oftedahl, 235 Minn. 383, 51 N. W. (2d) 93.

acknowledges that "[t]he policyholder very seldom takes the time and the trouble to read his policy, therefore, he depends upon [the agent] to tell him what he has purchased." This fact of life has been recognized by our decisions.

The early case of McCarty v. New York Life Ins. Co. 74 Minn. 530, 77 N. W. 426, involved an action to rescind a contract of life insurance on the ground of oral fraudulent representations of the insurer's agent. The insured did not discover the fraud until he read the policy 6 weeks after it was delivered to him. In answering the argument that if the insured had taken the pains to read the application he had signed or the policy when he had accepted it, he could have readily discovered the falsity of the representations, Mr. Justice Mitchell said (74 Minn. 536, 77 N. W. 428):

"* * * If there is anything well settled by the decisions of this and other courts, it is that, as between the original parties to a contract, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him. It does not lie in the mouth of the party guilty of making the false representations to say to the other party, 'You were a fool, or negligent, in believing and relying upon my statements.' "

In Haley v. Sharon Twp. Mutual Fire Ins. Co. 147 Minn. 190, 192, 179 N. W. 895, 896, we recognized that—

"* * * [i]t is a matter of common knowledge that the average person rarely reads his fire insurance policies except in the most cursory manner."

This observation may be applied with equal force to other types of insurance policies. See, Lundman v. United States F. & G. Co. 163 Minn. 303, 204 N. W. 159.[2]

---

[2]In his helpful discussion of contracts of insurance in Minnesota, Professor Prosser notes in 17 Minn. L. Rev. 590, 591, numerous authorities to the effect that if the insured at the time of accepting the policy was misled by the conduct of the company into a belief that it was satisfactory, he may show that he relied upon the company and did not read it.

If the insured is ignorant of the defect in the policy and has no special competence or experience in insurance matters, he is privileged to rely upon the representations of the agent without reading it or being charged with the contents of the policy. Lankhorst v. Union Fire Ins. Co. 236 Iowa 838, 20 N. W. (2d) 14.

5. We think the trial court was in error in sustaining an objection to the introduction of evidence to the effect that the defendant company was the only one of about five or six hundred companies doing business in the State of Minnesota which had in its public liability policy the provision containing the family exclusion clause upon which it seeks to avoid liability here. We held in Hollerman v. F. H. Peavey Co. 269 Minn. 221, 130 N. W. (2d) 534, that where fraud and deception are in issue, the evidence must necessarily take a wide range, and collateral facts are admissible if they have a logical tendency to throw light on the issue. Here, the object of the evidence was to show that the exclusion in question was not in current use and, accordingly, one which the average person would not expect to find in a public liability policy. Since the proffered evidence would have a bearing on the issue of plaintiff's asserted reliance upon the representations of defendant's agent, it should have been admitted.

6. It is also asserted by the defendant that parties to an insurance contract are free to contract as they see fit and the liability of the insurer is governed by the contract and that where there is no ambiguity in the policy there is no room for construction; that exclusions in insurance policies are as much a part of the contract as other parts thereof and the language used must be given its lawful and accepted meaning. Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19; Heikes v. New York Life Ins. Co. (8 Cir.) 171 F. (2d) 460; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; Engebretson v. Austvold, 199 Minn. 399, 271 N. W. 809; Pearson v. Johnson, 215 Minn. 480, 10 N. W. (2d) 357; Lang v. General Ins. Co. 268 Minn. 36, 127 N. W. (2d) 541; Giacomo v. State Farm Mutual Auto. Ins. Co. 203 Minn. 185, 280 N. W. 653. Plaintiff does not quarrel with these authorities and we agree that they are not controlling here since they relate to principles of law which

apply to the construction of the insurance contract and not to the issue of fraud, with which we are here concerned.

Reversed.