**Dawn C. YOST, Appellant,**

v.

**Lowell MILLHOUSE, Respondent.**

**No. CO–85–129.**

Court of Appeals of Minnesota.

Sept. 3, 1985.

---

James L. Schlichting, Peterson, Hanson, Schlichting & Davies, Albert Lea, for appellant.

Henry J. Savelkoul, Christian, Slen, Savelkoul, Johnson, Broberg & Kohl, Albert Lea, for respondent.

Heard, considered, and decided by RANDALL, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

RANDALL, Judge.

Appellant Dawn Yost obtained a default judgment in conciliation court against Lowell Millhouse for damages due to breach of express warranty and misrepresentation. Millhouse appealed the judgment to county court. The county court found for Yost and awarded her compensatory damages, attorney's fees, and punitive damages. The district court granted Millhouse's request for a new trial. On retrial, the county court entered judgment for Millhouse, from which Yost appeals. We reverse.

## FACTS

Dawn Yost, appellant, purchased two horses from respondent, Lowell Millhouse, in the fall of 1979. Yost paid $425.00 for "Pandy," a two-year old, and $400.00 for "Andy," a yearling. Pandy was registered and Yost received the registration papers at the time of delivery. Yost later discovered that Andy was not registered.

Yost testified that she would not have paid $400 for Andy had she known he was not registered. Millhouse assumed both horses were registered, and so told Yost. He told Yost that the registration papers for Andy would be arriving but their arrival could be delayed as long as a year. Millhouse pursued Eugene Ebert, from whom he received the horses, for over a year trying to obtain papers for Andy. During this time, he continually assured Yost that the registration papers would be forthcoming. The cost of registering Andy was $60.00 prior to September 1, 1980. After September 1, 1980, the cost rose to $500.00.

Yost sold Pandy for $600.00 after training it. After learning she would not obtain registration papers from Millhouse, she sold Andy for $350.00 in the fall of 1982. Yost also trained Andy.

Yost obtained a conciliation court judgment against Millhouse. Millhouse appealed the conciliation court judgment to county court. On December 19, 1983, the county court found for Yost based on breach of warranty and misrepresentation, and ordered Millhouse to pay her $2,350.00 compensatory damages, attorneys fees of $1,247.00 and $250.00 punitive damages. The compensatory damages were determined by subtracting the amount Yost received for selling Andy ($350.00) from what the court found from Yost's testimony to be Andy's value had he been registered ($2700.00).

The trial court denied Millhouse's motion for amended findings or a new trial. Millhouse appealed to district court for a retrial based on newly discovered evidence and then appealed the district court's decision granting a new trial but contingent on Millhouse paying $700.00 toward Yost's attorney's fees. On October 14, 1983, the District Court Appellate Division removed the attorney fees contingency and simply remanded for a new trial based on affidavits presented by Millhouse citing newly discovered evidence.

On retrial of the matter July 12, 1984, the trial court entered judgment for Millhouse finding, among other things, in its order entered October 18, 1984, that Millhouse's statements that Andy was registered were not an express warranty, that Millhouse did not intentionally misrepresent Andy's registration, that Millhouse's statements were not made with intent to induce Yost to purchase Andy, that registration was not a material fact, that Andy's value was the same whether registered or not, that Yost sustained no damage, and that Millhouse's representations were not willful and malicious.

Yost appeals the trial judge's denial of her motion for amended findings or a new trial and from the October 18, 1984, judgment entered October 22, 1984.

## ISSUES

1. Did the trial court err in finding that Millhouse's statements were not an express warranty?

2. Did the trial court err in finding that Millhouse did not commit the tort of misrepresentation?

3. Did the trial court err in failing to award Yost reasonable attorney's fees?

4. Did the trial court err in failing to award Yost punitive damages?

## ANALYSIS

### I.

*Express Warranty*

 The trial court found that Millhouse's statement that the horse was registered was not an express warranty. This conclusion of law is not binding on this court, and may be stricken if the trial court improperly applied the law to undisputed facts. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977). The trial court incorrectly applied the law. The facts disclose that Millhouse made an express warranty.

(1) Express warranties by the seller are created as follows:

(a) *Any affirmation of fact or promise made by the seller* to the buyer which relates to the goods and becomes part of the *basis of the bargain* creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

\* \* \* \* \* \*

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Minn.Stat. § 336.2–313 (1984).

Here, Yost proved, and the trial court found, that Millhouse represented to Yost that the horse was registered. Millhouse does not dispute this finding. The representation was made verbally when Millhouse showed Yost the horse before the sale. Additionally, the November, 1979, advertisement to which Yost responded indicated that the horse was registered. At the time of the sale, Millhouse gave Yost a signed American Quarter Horse Association transfer report. Transfer reports enable the seller to transfer the registration papers to the buyer, but do not indicate registration itself. The report read:

I certify that the horse sold is the horse registered with the Association so described in the Certificate of Registration delivered to the buyer. I authorize the Association to record this transfer of ownership.

Millhouse admitted at trial that there is no reason to provide transfer papers unless a horse is registered. Thus, the fact that the horse was registered was part of the basis of the bargain. None of these facts were in dispute. The requirements of an express warranty were proven, and the trial court erred in finding that no express warranty was created.

### II.

*Misrepresentation*

Yost claims the trial court erred by not finding Millhouse liable for misrepresentation. The trial court's conclusion of law may be stricken if the court improperly applied the law to undisputed facts. *A.J. Chromy,* 260 N.W.2d 579. The elements of misrepresentation are as follows:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. The person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Manufacturing,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967).

As outlined above, Millhouse falsely represented that the horse was registered.

 The trial court found that the fact of registration was not material. A statement of fact is material if it would naturally affect the conduct of the party addressed. *Griffin v. Farrier,* 32 Minn. 474, 21 N.W. 533 (1884). In *Swedeen v. Swedeen,* 270 Minn. 491, 500, 134 N.W.2d 871, 878 (1965), the Minnesota Supreme Court held that a statement that an insurance policy provided greater coverage than the previous policy was material because it induced the plaintiff to purchase the new policy. Here, Millhouse's statement that the horse was registered similarly induced Yost to buy the horse at the price of $400.00. Yost testified that had she known that the horse was not registered, she would have been willing to pay only $150.00 for the horse. The trial court also erred in evaluating the materiality of the statement in light of its finding that Yost sustained no damage. This conclusion was a premature damage calculation. Materiality is not the same thing as damages. Damages are calculated once the other elements of fraud are proven.

 The trial court found that Millhouse did not intentionally misrepresent that Andy was registered. However, under *Davis* it is sufficient for the representer to assert facts of his own knowledge without knowing whether they are true or false. Knowledge of falsity is not required. Here

Millhouse continuously represented that he knew the horse was registered when, in fact, he had no such knowledge. Thus, the trial court erred in finding that Yost failed to prove the sixth *Davis* element of misrepresentation.

Yost claims that the trial court erred in finding that Millhouse did not intend Yost to rely on his representations. However, undisputed facts show that Millhouse intended Yost to rely on his representations. He presented her with transfer papers and assured her over a period of time after purchase that the papers were coming. She relied on his assurances to her detriment by waiting to sell the horse and mitigate her losses until he finally informed her that the papers would not be coming. In *Davis,* the defendant represented that a sales territory was two-thirds more productive than defendant knew or had reason to know it had been. The fact that the plaintiff did not specifically condition his acceptance of the sales position on the truth of the representation did not negate reliance. Here, Yost similarly did not specifically condition acceptance of the horse on registration. Yet, Yost relied on Millhouse's statements, as demonstrated by the fact that she kept in contact with him about the arrival of registration papers. These facts also call into question the trial court finding that the representation of registration was not a material fact. We hold that the trial court erred in finding no materiality.

 Minnesota follows the minority rule, or "out-of-pocket" rule in measuring damages for fraudulent representations inducing a contract. The measure is the difference between what the defrauded person paid and what he or she received:

[T]he rule is that, where the property is not returned, the measure of damages is the difference between the actual value of the property received and the price paid for it, and in addition thereto such other or special damages as were naturally and proximately caused by the fraud prior to its discovery, inclusive of restitution for expenses reasonably and necessarily incurred after discovery of

the fraud in a bona fide effort to mitigate the aforesaid damages.

*Lowrey v. Dingmann,* 251 Minn. 124, 127, 86 N.W.2d 499, 501–2 (1957); *see also Fischer v. Division West Chinchilla Ranch,* 310 F.Supp. 424, 430 (D.Minn.1970). By contrast, the majority "benefit of the bargain rule" allows one to recover what one would have received had the representations relied upon been true. The majority rule allows recovery of anticipated profits.

■ Here, Yost testified that she would have paid only $150.00 for the horse had she known it was not registered. We do not consider that figure to be competent opinion testimony on fair market value. It is merely a declaration by a prospective buyer as to what she might offer. On the other hand, Millhouse's expert (found qualified by the court to give opinion testimony) testified that the horse in question had about the same value unregistered or registered, and that value was approximately $300–400. The lack of difference was based on a belief that the horse was not suitable for breeding purposes and thus registration did not matter. His testimony indicated that Yost received a horse worth approximately what she paid for it.

The trial court chose to resolve this value conflict in favor of Millhouse and found no damages. However, the undisputed fact was that Yost suffered at least a documented $50.00 loss. Yost paid $400.00 for the horse and trained it. The best price she was able to obtain a few years later was $350.00. Although the parties agreed that there had been a general decline in the market between the time Yost bought the horse and the time she sold it, Yost nevertheless suffered, at minimum, a $50.00 loss. Based on our finding of misrepresentation, we reverse and remand for entry of judgment in that amount. This measurement does not award Yost anticipated profits because her testimony as to what Andy would have been sold for as a registered, trained, and older horse was speculative and uncorroborated. Our award is based on the undisputed testimony regarding Andy's purchase price and sale price.

Millhouse argues that Yost could have mitigated damages by registering Andy herself. However, his own testimony showed that he did not tell Yost Andy had no papers until two years after the sale, at which point it would have cost Yost $500.00 to register Andy. Registration costs on horses rise substantially as the horse gets older. Had Millhouse had the complete registration papers when he should have, registration costs to him or her would have been $50.00.

### III.

*Attorney's fees*

Minn.Stat. § 8.31, subd. 3(a) (1984) authorizes recovery of attorneys fees for violations of the Consumer Fraud Statute, Minn. Stat. § 325 F. 69 (1984). *Jacobs v. Rosemount Dodge-Winnebago South,* 310 N.W.2d 71 (Minn.1981). That statute defines consumer fraud as:

> The act, use, or employment by any person of any fraud [or] * * * misrepresentation * * * with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn.Stat. § 325 F. 69, subd. 1.

■ We have held that Millhouse misrepresented that the horse was registered. As a matter of law, the fraud constitutes a violation of the Consumer Protection Act for which reasonable attorney's fees are recoverable.

■ Awards of reasonable attorney's fees are questions of fact to be determined by the trial court, taking into account

> all relevant circumstances, including the *time and labor required;* the nature and difficulty of the responsibility assumed; the *amount involved* and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of

counsel; and the fee arrangement existing between counsel and the client.

*State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971) (emphasis added). We note that here Yost initially pursued her claim in conciliation court, an appropriate forum given the amounts involved. On Millhouse's appeal, the county court tried the matter *de novo*, the court ordered a new trial on certain conditions, Millhouse appealed the conditional order granting a new trial, and the matter was retried. Yost then appealed to this court. Thus, much time and labor were ultimately required to pursue Millhouse.

The Consumer Fraud Act is designed to encourage persons to take action to stop the fraudulent activity covered by the act, even though the amount actually lost may be small. We reinstate the original trial court award of attorney fees in the amount of $1,247.00. Since that time, appellant's attorneys now claim additional attorney fees totalling approximately a few thousand dollars more. The claimed additional amount may or may not be reasonable taking into consideration all the legal work done on the small amount in dispute. We reverse and remand to the county court to consider and determine whether an award of additional attorney fees is reasonable.

## IV.

*Punitive damages*

■ After the first trial, the court awarded Yost $250 in punitive damages. Yost now claims that she is entitled to punitive damages. Minn.Stat. § 549.20, subd. 1 (1984) provides that "punitive damages shall be allowed in civil actions only upon *clear and convincing evidence* that the acts of the defendant show a *willful indifference* to the rights or safety of others." We find that on the facts of this case, the trial court did not abuse its discretion in not awarding punitive damages.

## DECISION

We reverse and remand to the county court for entry of judgment for appellant in the amount of $50.00 for compensatory damages and $1,247.00 in attorney fees.

We affirm the trial court's denial of punitive damages.

We reverse the court's denial of reasonable attorney fees and remand to the court for a finding of whether additional attorney fees are now reasonable.

Affirmed in part, reversed in part, and remanded.