Russell NAVE, et al., Respondents,

v.

Michael DOVOLOS, defendant and third party plaintiff, Appellant,

v.

HARVEY HANSEN REALTORS, INC., third party defendant, Respondent.

No. C3–86–779.

Court of Appeals of Minnesota.

Nov. 4, 1986.

Robert E. Boyle, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for Russell Nave, et al.

Ernest A. Lindstrom, Edina, for Michael Dovolos, defendant and third party plaintiff.

Anthony R. Soderman, Minneapolis, for Harvey Hansen Realtors, Inc., third party defendant.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

This action was commenced by respondents Russell and Mildred Nave, purchasers of real estate, against appellant Michael Dovolos, seller, for fraudulent misrepresentation. In its amended judgment, the trial court concluded that Dovolos fraudulently misrepresented that the subject property had hardwood floors and entered judgment in favor of the Naves for $6,865.

Dovolos appeals from the denial of his motion for a new trial, claiming that evidence relating to his oral representation was precluded by the parol evidence rule and that conduct by Russell Nave amounted to a conflict of interest estopping him from pursuing the present action. During pendency of this appeal, the parties stipulated to dismissal of third-party defendant Harvey Hansen Realtors, Inc. We affirm.

## FACTS

In 1984, Dovolos, a retired maintenance engineer, listed his home located in Edina, Minnesota with Sharon Van Gieson, a realtor with Harvey Hansen, for $124,500. The house had been on the market for about a year with different realtors, and Van Gieson indicated it was a difficult home to sell because it had no basement. The supplement to the listing information contained in the Multiple Listing Service (MLS) described the home as having "new carpeting" but made no reference to the condition or quality of the flooring underneath the carpeting. Russell Nave, a 70–year–old retired salesman who had obtained his realtor's license about six years earlier, became interested in the home after seeing it in the MLS book. He contacted Van Gieson.

On August 22, 1984, Van Gieson and the Naves arrived at the house for a viewing. Van Gieson introduced the parties and indicated to Dovolos that Russell Nave was a licensed realtor employed by another broker and that he was interested in buying the house for his own use. At some point, Mildred Nave asked Van Gieson if there were hardwood floors under the carpeting. Van Gieson did not know and went out to the patio to ask Dovolos, who entered the room.

At trial, the parties disagreed as to the substance of Dovolos' statements. According to the Naves and Van Gieson, Dovolos stated that there were "beautiful hardwood floors" in certain rooms and explained which rooms contained the hardwood floors. Dovolos disagreed and testified:

They looked at the house. They went through the house. And they asked about what kind of flooring we had. So part of the house being a slab concrete I defined; and I said, "In this part of the house, we have wood floors, underlayment; and on the other part we have slab concrete," exactly that. I never said hardwood finished floors.

Dovolos' daughter, who was in another room but overheard the conversation, similarly testified:

My father said, "There is slab concrete on this part of the house"; and he gestured over to the kitchen, den, master bedroom and bathroom. "And on this side of the house we have wood floor" which he was referring to as the base. He was trying to distinguish the two different parts of the house. And that's all that was said about it.

Dovolos admitted at trial that he had replaced the carpeting a few years before; he thus apparently knew the condition and quality of the flooring underneath.

Although the Naves visited the home four or five times after that, the subject of flooring never came up again. Russell Nave testified, however, that the presence of hardwood flooring was of significant interest to him. Mildred Nave testified that when Dovolos indicated there were beautiful hardwood floors in certain areas of the house, she became "excited" because that was "exactly what I wanted." She testified that they did not inquire further about the floors because:

I was just so happy we had these hardwood floors. I assumed I had these. And I was already placing the rugs.

\* \* \* \* \* , \*

[W]e have these two beautiful oriental rugs, and I wanted to display them. And I wanted to have them on these hardwood floors. This is what—they're important to us. And so I didn't think it was necessary to bring it up.

Dovolos testified that Mildred Nave had mentioned these rugs, but his memory of the conversation differed:

And she says exactly to me that "That's too bad not having hardwood finished floors because I could use my Persian rugs." Well I said, "You got beautiful carpet in here. You can sell your Persian rugs and get the money." And then Mr. Nave came in to the conversation; and he said to me, "That's what I have been telling her, Mike." That was it.

The Naves submitted three offers, all prepared by Russell Nave. Although none of the offers mentioned hardwood floors as part of the purchase; both Russell Nave and Van Gieson explained that flooring is generally not expressly listed since it is considered a piece of realty and not personal property. The third offer for $110,000 was acceptable to Dovolos, and a purchase agreement was executed on September 26, 1984.

The purchase agreement was drafted by Russell Nave but typed by Van Gieson on a Harvey Hansen form. Van Gieson testified that it is not unusual for realtors to use each other's forms. Russell Nave signed both as buyer and as "licensed real estate agent." He and Van Gieson agreed that the fact that "Harvey Hansen—Realtors" appeared above his signature as an agent was an oversight and that it should have been deleted. They testified that Dovolos was fully advised that Russell Nave was acting on his own behalf at all times.

The sale was closed on November 8, 1984 and the Naves moved in the same day. Mildred Nave testified that during the move she first discovered that there were no hardwood floors in any portion of the home.

At trial, Russell Nave testified that the house was worth $110,000 with hardwood floors, but only $103,000 to $104,000 without. Additionally, he had obtained a written estimate for the installation of oak flooring from Michael Divine, who had been in the floor covering business for 17 years. Divine's estimate totalled $6,865 and was based on room dimensions given to him over the phone by Russell Nave.

## ISSUES

1. Did the trial court improperly admit parol evidence?

2. Did the trial court properly conclude that Dovolos had made a fraudulent misrepresentation to the Naves entitling them to damages?

## ANALYSIS

### I

The Naves claimed they were induced to purchase the house by Dovolos' representations that it had hardwood floors, and that such representations were fraudulent. Dovolos contends that parol evidence as to his alleged representations should not have been permitted to add terms to the purchase agreement, which was silent on the subject of flooring.

The parol evidence rule operates to exclude evidence outside a written document which varies or contradicts the plain terms of the document. *Hield v. Thyberg,* 347 N.W.2d 503, 507 (Minn.1984). A well-recognized exception to this rule, however, is when one party alleges that he or she was induced by another to enter into a written contract by fraudulent oral representations. Under these circumstances, the parol evidence rule is inapplicable to exclude the fraudulent misrepresentations. *Johnson Building Co. v. River Bluff Development Co.,* 374 N.W.2d 187, 193 (Minn.Ct. App.1985), *pet. for rev. denied,* (Minn. Nov. 18, 1985). Evidence of fraud is not admitted to vary the terms of a contract but to establish that, because of the alleged fraudulent representations, no enforceable contract was made. Indeed, if such evidence was excluded, a claim of fraud could seldom be proved. *Id.; see also Hanson v. Stoerzinger,* 299 N.W.2d 401, 404 n. 4 (Minn.1980).

■ The trial court did not err in admitting evidence of Dovolos' oral statements.

### II

■ On appeal, findings made by the trial court will not be set aside unless they

are manifestly contrary to the evidence or clearly erroneous. *Strouth v. Wilkison*, 302 Minn. 297, 299, 224 N.W.2d 511, 513–14 (1974); *Witzig v. Philips*, 274 Minn. 406, 410, 144 N.W.2d 266, 269 (1966). This rule applies whether the appeal is from a judgment or from an order denying a new trial. *Witzig*, 274 Minn. at 410, 144 N.W.2d at 269.

The elements of fraudulent misrepresentation are set forth in *Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 175 N.W.2d 184 (1970):

(1) There must be a representation.

(2) That representation must be false.

(3) It must have to do with a past or present fact.

(4) That fact must be material.

(5) It must be susceptible of knowledge.

(6) The representer must know it to be false or, in the alternative, must assert it as of his own knowledge without knowing whether it is true or false.

(7) The representer must intend to have the other person induced to act or justified in acting upon it.

(8) That person must be so induced to act or so justified in acting.

(9) That person's action must be in reliance upon the representation.

(10) That person must suffer damage.

(11) That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Id.* at 202–03, 175 N.W.2d at 187 (*quoting Davis v. Re-Trac Manufacturing Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967)).

In Minnesota, to constitute actionable fraud, it "is immaterial whether a statement made as of one's own knowledge is made innocently or knowingly. An intent to deceive no longer is necessary." *Swanson v. Domning*, 251 Minn. 110, 115, 86 N.W.2d 716, 720 (1957) (footnote omitted); *see Hollerman v. F.H. Peavy & Co.*, 269 Minn. 221, 228, 130 N.W.2d 534, 539–40 (1964). As stated in *Swedeen v. Swedeen*, 270 Minn. 491, 134 N.W.2d 871 (1965):

Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge.

*Id.* at 496, 134 N.W.2d at 877 (quoting *Swanson*, 251 Minn. at 115, 86 N.W.2d at 720).

### *False Representation/Reliance/Susceptibility of Knowledge*

■ In the present case, the evidence as a whole supports the trial court's findings that Dovolos falsely represented to the Naves that certain rooms in his home had hardwood floors and that the Naves relied on this representation in signing the purchase agreement. Although the testimony was conflicting as to whether Dovolos made such a statement, the issue is primarily a credibility determination and thus properly resolved by the trier of fact. *See* Minn.R.Civ.P. 52.01.

The falsity of the representation is clearly supported by the evidence because it is undisputed that the flooring beneath the carpeting was underlayment. Even if Dovolos did not fully understand the exact meaning of the term "hardwood floors" as finished floors, he asserted the statement as true and intended to induce the Naves' reliance on the statement. The misrepresentation was also susceptible of knowledge since Dovolos had replaced the carpeting a few years earlier and thus knew, or should have known, the condition and quality of the flooring.

### *Justifiable Reliance/Materiality of Representation/Damages*

■ Mere reliance upon a false representation does not in and of itself channel the inquiry into the damage element of fraudulent misrepresentation. The evidence must further show that the Naves were justified in relying on Dovolos' statement and in

taking action on that basis. *See Johnson,* 374 N.W.2d at 194–95.

The trial court expressly found that the Naves were under no obligation to verify the presence of hardwood floors and that they acted reasonably in taking Dovolos at his word. We agree. It is well established in Minnesota that assertions of fact as to quality intended to induce a business transaction may be justifiably relied upon without further investigation. *Erickson v. Mathwig,* 226 Minn. 55, 57, 31 N.W.2d 918, 918 (1948).

■ Materiality of a misrepresentation is closely related to the reasonableness of reliance. "A statement of fact is material if it would naturally affect the conduct of the party addressed." *Yost v. Millhouse,* 373 N.W.2d 826, 830 (Minn.Ct.App.1985). Thus, if a party is justified in his belief that a representation is true and this belief substantially affects his or her decision to act, the representation is material. *See Prosser and Keeton on the Law of Torts* § 108 (5th ed. 1984).

In *Yost,* the trial court determined that false statements assuring the purchaser that a horse she bought was registered did not constitute a material misrepresentation. We reversed, noting that the purchaser's failure to specifically condition acceptance of a sale on the truth of the representation did not negate reliance. Because seller's false statements that the horse was registered and that registration papers would be forthcoming induced the purchaser to buy the horse at a higher price than she would otherwise be willing to pay. We held that the representations were material. *Id.* at 830.

Similarly, in *Swedeen,* the supreme court held that an insurance agent's representation that a new policy provided greater coverage than a previous policy constituted a material misrepresentation because it induced the insured to purchase the new policy. *Id.* at 499–500, 134 N.W.2d at 877–78.

■ Here, Russell Nave testified that the presence of hardwood floors was significant to him. Mildred Nave testified that hardwood floors were "exactly what [she] wanted" because she intended to display her oriental rugs. Although neither claimed that they would not have purchased the home had they known the truth about the flooring, Russell Nave did testify that the house was worth less without hardwood floors. From this it reasonably can be inferred that the Naves would not have offered $110,000 for the house had they known the true character of the flooring.

It is also significant that the house had been on the market for about a year when the Naves viewed the premises and, according to Van Gieson, was a difficult home to sell since it had no basement. Under these circumstances, it is reasonable to infer that Dovolos, in response to Mildred Nave's inquiry about hardwood floors, intended to induce the Naves into purchasing his home.

■ In its original order, the trial court concluded that Dovolos' representation was "not material so as to excuse performance of the contract." In response to post-trial motions, the trial court amended that conclusion to state that Dovolos *"fraudulently* represented that there were hardwood floors." (Emphasis supplied.) [1]

---

1. Although confusing, it is evident that the trial court's conclusion that Dovolos' representation was *"not material* so as to excuse performance of the contract" refers to the Naves' damage claim and not to the issue of materiality as an element of the tort of fraudulent misrepresentation. When, as here, the purchaser claims that the seller's fraudulent misrepresentation induced the formation of a contract but the purchaser does not seek return of the property, Minnesota adheres to the "out-of-pocket rule," which measures damages as the difference between what the defrauded party paid and what

he or she actually received, together with other damages proximately caused by the fraud. *Johnson Building Co. v. River Bluff Development,* 374 N.W.2d 187, 195 (Minn.Ct.App.1985); *Yost v. Millhouse,* 373 N.W.2d 826, 830, 830–31 (Minn.Ct.App.1985). More precisely, in cases involving a fraudulent misrepresentation to a buyer of real estate, the measure of damages is the amount paid less the fair market value of the property. *Peterson v. Johnston,* 254 N.W.2d 360, 362 (Minn.1977); *Tysk v. Griggs,* 253 Minn. 86, 91 N.W.2d 127 (1958). Dovolos, however,

We think it is clear that in concluding Dovolos' representations were fraudulent, the trial court implicitly determined the representation was material. Such a determination is supported by the evidence.

■ Dovolos additionally claims that Russell Nave, as a licensed realtor, breached a fiduciary obligation by improperly drafting the purchase agreement and arranging for a split commission [2] with Van Gieson by acting as a broker for himself (as buyer) and as a broker for Dovolos (as seller). We need not elaborate on this claim except to say that Russell Nave's identity as realtor and/or agent is not controlling when all the parties knew Nave was interested in purchasing the home for personal use.

### DECISION

The trial court properly admitted parol evidence. The trial court's finding of fraudulent misrepresentation by the sellers was not clearly erroneous.

Affirmed.

does not contest the damages awarded by the trial court.

**2.** Of the total seven percent commission called for by the listing agreement, Harvey Hansen was to receive 55 percent and Russell Nave 45 percent. In order to reach an agreement, however, the parties reduced the total price and Russell Nave waived his commission, resulting in a higher net for Dovolos.