O'BRIEN ENTERTAINMENT AGENCY, INC., et al., Appellants,

v.

Mike WOLFGRAMM, et al., Good Music Agency, Inc., Respondents.

No. C0-86-2103.

Court of Appeals of Minnesota.

June 9, 1987.

Review Denied Aug. 12, 1987.

Brad C. Eggen, Kurzman, Grant, Manahan & Patridge, Minneapolis, for appellants.

Stephen A. Bard, Bard & Bard, Minneapolis, for Mike Wolfgramm, et al.

Gary L. Clark, Gaasedelen & Clark, Minneapolis, for Good Music Agency, Inc.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a summary judgment against appellant O'Brien Entertainment Agency, Inc. (O'Brien) and certain

independent contractors associated with the booking agency who seek damages resulting from an alleged breach of a 1983 personal services contract between O'Brien and a family musical group now known as the "Jets." We affirm in part and reverse in part.

## FACTS

This litigation stems from a 1983 general services agreement between a performing artists booking agency and a family musical group now known as the "Jets" which began performing as a musical group sometime around 1983 and derived all of its income from its musical performances. The band consists of eight children; six are children of Moikel (Michael) and Olimipia (Vake) Wolfgramm, the other two children are cousins of the Wolfgramm children. Michael and Vake Wolfgramm were born on the Polynesian island of Tonga, immigrated to the United States in 1965, and eventually moved to Minnesota in 1982.

During 1982 and early 1983 the Wolfgramm family performed under the names "Quazar" and the "Polynesian Pearls." Neither Michael nor Vake speak English very well and Michael apparently cannot read or write English, although he can sign his name in English. Michael signed engagement contracts when necessary.

In April 1983, Michael alone signed a general services agreement as "Leader of 'Quazar' and the 'Polynesian Pearls'" with the O'Brien agency under which O'Brien was engaged

> for a term of three years, * * * as my sole and exclusive agent, advisor, artists' manager, and representative with respect to my services, activity and participation in all branches of the entertainment, publication, and related fields throughout the world, including but not limited to merchandising, testimonials and commercial tieups, whether or not using my name, voice or likeness.

The agreement provided for certain payments to O'Brien to continue after the contract expired. The parties dispute whether Michael understood the terms of the agreement. At the time of the contract signing, all of the Wolfgramm children performing in the band were minors. LeRoy Wolfgramm turned eighteen on July 19, 1983; Eddison Lavatai Wolfgramm turned eighteen on August 14, 1983.

Eventually, the O'Brien agent who generally was responsible for booking the Wolfgramms' engagements contacted respondent Donald Powell who is knowledgeable of the recording industry and experienced in promoting performing artists. The Wolfgramms indicated to Powell their displeasure with O'Brien and after examining a copy of their contract Powell advised the Wolfgramms that they could void the contract if they wanted to because of the group's minority. He drafted a mailgram to the O'Brien agency for Michael Wolfgramm indicating that the Wolfgramms had requested Powell to manage and direct the career of the family group. On May 21, 1984, the Wolfgramms signed management and recording agreements with Powell. Their attorney notified the O'Brien agency that the Wolfgramms were revoking and rescinding their agreement with O'Brien because "at the time it was signed by Mr. Michael Wolfgramm, all of the members of the musical act were under the age of 18 and legally minors."

O'Brien and independent agents associated with the agency sued the Wolfgramms, Powell, and a booking agency which contracted with the Wolfgramms, for alleged damages exceeding one million dollars based on several legal theories. O'Brien asked the district court to reform the contract to reflect the parties' alleged intent to bind the band members to the contract and to enjoin the respondents from contacting any of the establishments which had booked engagements through the O'Brien agency. O'Brien also wanted Powell and the current booking agency enjoined from asserting their authority to manage the Wolfgramm band.

The district court granted the respondents' motion for summary judgment concluding the contract could not be enforced against six of the eight children on any grounds because those six children were minors both at the time of the contract

signing and at the time of the disaffirmance. As to the two children who reached the age of majority after the contract was signed and performed under the contract for several months after they became adults, the court concluded they had not ratified the contract after reaching the age of majority. The court reached that conclusion on evidence that those two children not only had limited knowledge of the agreement and no knowledge of its specific terms, but dissaffirmance by them would have been impractical given their familial and professional ties to the band. As to O'Brien's argument that the contract was for necessaries and therefore binding on minors, the court held the contract still was voidable because the minors were not members of a "business organization" and because of the executory nature of the contract.

The court concluded that the agreement could not be enforced against Michael and Vake individually because the parents were not members of the band, the parties intended to bind the children and not the parents, and Michael had not signed the agreement as a guarantor or surety. The district court also held Michael free of personal liability and denied contract reformation on the grounds that, at the most, any misrepresentation by Michael of authority to act on behalf of his children was a misrepresentation of law and not actionable because Michael could not legally bind the children under the circumstances.

The court granted summary judgment against O'Brien on its charges against Powell of contractual interference, noting that such interference did not arise merely because Powell was asserting equal or superior interests, given the voidable nature of the contract. The district court also held mere communication to clubs and lounges that the Wolfgramms now were represented by Powell was not defammatory.

The court found no basis for O'Brien's unjust enrichment claims, and determined there were no grounds for damages based on bad faith or for injunctive relief. O'Brien appeals.

## ISSUE

Did the district court err by granting summary judgment?

## ANALYSIS

On appeal, the evidence must be viewed in a light most favorable to the nonmoving party. Summary judgment may be granted only if

the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that [the movant] is entitled to judgment as a matter of law.

*Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955) (footnote omitted).

### *Children's Contract Liability*

■ The O'Brien contract is not enforceable against the Wolfgramm children simply because none of the Wolfgramm children signed the April 1983 agreement and it therefore does not comport with the statute of frauds.

No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, *and subscribed by the party charged therewith:*

(1) Every agreement that by its terms is not to be performed within one year from the making thereof; * * *.

Minn.Stat. § 513.01 (1982) (emphasis added). *See Diffenderfer v. Heublein, Inc.*, 285 F.Supp. 9, 15 (D.Minn.1968), *aff'd on other grounds*, 412 F.2d 184 (8th Cir.1969) (an employment contract between an employee and a subsidiary was unenforceable against the parent corporation because no documents contained in the records identified the parties, indicated an acceptance, or were subscribed to by the parent corporation). Partial performance does not take the contract out of the statute of frauds. *See Roaderick v. Lull Engineering Co., Inc.*, 296 Minn. 385, 388, 208 N.W.2d 761, 763 (1973).

■ Even though the reasonable value of services performed under an unenforcea-

ble employment contract may be recoverable if the contract action itself is barred by the statute of frauds, *see id.* at 388, 208 N.W.2d at 764, the record does not indicate that the Wolfgramms were unjustly enriched. The O'Brien agency was paid commissions on all engagements it booked and which were performed by the Wolfgramms.

### Parents' Liability

The record indicates that Michael and Vake, the parents, were involved musically with the band only on a very limited basis. They transported the children to their engagements, performed sound and lighting tasks, and sewed costumes and managed the family's business affairs which at that time encompassed payment of basic living expenses and the children's weekly allowances. The band members themselves were responsible for the group's musical selections and on-stage productions. *See Ristau v. Riley*, 230 Minn. 341, 345, 41 N.W.2d 772, 774 (1950) ("The existence of a parent-child relation alone does not permit an inference that one is the servant or agent of the other.").

■ We do believe the district court erred by granting summary judgment in favor of Michael. Michael did sign the agreement. We believe there are disputed material facts as to whether he understood the terms and implications of the contract which do relate to his personal liability under the contract. His liability can be determined only after those facts have been resolved by a factfinder. Accordingly, we reverse that portion of the district court's judgment granting summary judgment in favor of Michael individually and we remand for further findings of fact on this issue.

■ While the record indicates that Vake was involved in the discussions preliminary to the contract signing, she is not individually identified on the contract and she did not sign the agreement. The contract is not enforceable against her. *See* Minn.Stat. § 513.01 (1982).

### Wrongful Interference

■ O'Brien has offered no specific facts showing wrongful interference with the 1983 contract. *See* Minn.R.Civ.P. 56.05 (a party "must present specific facts showing that there is a genuine issue for trial").

The elements essential for recovery of damages for inducing breach of contract are (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) without justification; and (5) damages resulting therefrom.

*Snowden v. Sorensen*, 246 Minn. 526, 532, 75 N.W.2d 795, 799 (1956). The record indicates that the Wolfgramms rescinded their O'Brien agreement only after they became dissatisfied with their musical development under the O'Brien contract and became aware of their possible right to void the contract. Accordingly, the district court did not err by granting summary judgment on O'Brien's wrongful interference claims.

### Defamation

■ After the Wolfgramms contracted with Powell, Powell notified various clubs that the Wolfgramms no longer were represented by the O'Brien agency. The notices advised the clubs that the Wolfgramms had changed booking and management agencies, advised the clubs that the Wolfgramms may not honor existing engagements, and stated that the clubs may need to make other financial or booking arrangements to cover the cancellations. Although O'Brien alleges these communications were defamatory, Gerald O'Brien admitted his agency still works with those managers and books groups into their establishments and that any damages sustained were minimal. However, even if there was some injury, truth is a complete defense. *See Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Powell's statements about the Wolfgramms' revocation of the O'Brien contract were truthful to the extent that the Wolfgramms had by then notified O'Brien that they were rescinding their agreement and had in fact contracted with Powell.

The defamatory nature of a communication generally is a question of fact. *See Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn.1977). However, from our review of the record we cannot conclude that the district court erred by granting summary judgment on this issue because Powell's communications to the club owners do not appear to constitute even general disparagement. *See id.* (imputations about a person's business "must be peculiarly harmful to the person in his business. General disparagement is insufficient.").

### *Punitive Damages*

Punitive damages shall be allowed in civil actions only upon *clear and convincing evidence* that the acts of the defendant show a *willful indifference* to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1 (1986). (emphasis added). The district court properly concluded that there was no basis for punitive damages when there is no liability for actual damages. *See Yost v. Millhouse*, 373 N.W.2d 826, 832 (Minn.Ct.App.1985). (The trial court did not abuse its discretion by not awarding punitive damages when there was no "clear and convincing evidence" of willful indifference).

### DECISION

The district court did not err by entering summary judgment in favor of Vake Wolfgramm, the Wolfgramm children and Donald Powell. We reverse the district court's summary judgment in favor of Michael Wolfgramm individually and remand for further findings on his personal liability under the April 1983 contract.

Affirmed in part, reversed in part and remanded.