## EDGAR F. WITZIG AND ANOTHER v. A. PERRY PHILIPS AND ANOTHER.

144 N. W. (2d) 266.

July 15, 1966—No. 39,962.

*Harry H. Peterson* and *Hale, Skemp, Hanson, Schnurrer & Skemp,* for appellants.

*L. L. Duxbury, Jr.,* for respondents.

NELSON, JUSTICE.

Plaintiffs, who are residents of Wisconsin, brought this action against defendants seeking cancellation of a deed which plaintiffs contend they executed in reliance upon fraudulent representations made to them by defendants' attorney and agent. The trial court found that plaintiffs had failed to establish title to the real estate involved by competent proof and had not proved that defendants' attorney had made false statements to them or that they had relied on any material representation made by him. Accordingly, the court ordered that the action be dismissed. Plaintiffs appeal from the judgment entered and from an order denying their motion for a new trial.

In 1906 the city of Winona condemned certain lands bordering Lake Winona, including the parcels described in the deed executed by plaintiffs, for the purpose of making a city park. John Zenk, Sr., the father of plaintiff Clara Witzig, was at the time awarded a certain sum in the condemnation proceedings for his interest in one of the parcels described in the quitclaim deed.

The record would indicate that from 1906 until the trial of this action much of the condemned land, including the parcels described in the deed, has not been used for any purpose. Sometime during the early part of 1964 defendants promoted a plan to build a Holiday Inn Motel on

some of the land subject to the city's easement. As a result they sought to acquire title thereto, engaging the Winona law firm of Streater, Murphy & Brosnahan to represent them in negotiations to obtain title. By February 14, 1964, defendants had obtained a conditional option on some of the land, including that described in the deed from plaintiffs to defendants.

On February 14, 1964, Roger P. Brosnahan, a partner in the law firm, went to the home of plaintiffs at Eau Claire, Wisconsin, to obtain a quitclaim deed from them for the purpose of clearing up what was considered a possible cloud on the title. Mr. Brosnahan informed the plaintiffs that he represented defendants and that they were planning to build a motel. He did not indicate that the motel was going to be built on the lands described in the quitclaim deed but rather that there were negotiations under way for an option; that defendants were interested in said lands; and that since there was a possible defect in the title that such defect would have to be cleared up.

Brosnahan during his interview with the plaintiffs inquired of them whether they wanted their attorney present during the negotiations. They answered in the negative. Brosnahan first offered $50 for a quitclaim deed. After a discussion lasting almost an hour and a half, $100 was finally agreed upon as a consideration and plaintiffs and Brosnahan went to a nearby shopping center to have the deed notarized.

Plaintiffs claim that in the summer of 1964 they learned what their interest in the property was—that plaintiff Clara Witzig as the "sole surviving heir of John Zenk, Sr." holds the "reversion interests of her father" in the property, a title which plaintiffs claim would be, as a matter of law, a title in fee simple if the city abandoned its easement. They claim also that this interest is one of considerable value. (Mrs. Witzig testified that she thought the property was worth $2,500 per acre.) They thereupon tendered the $100 consideration paid by defendants and requested a reconveyance. Defendants refused the tender and this action to cancel the deed followed.

The exact amount of land in which Zenk held a reversionary interest, if any, as well as the location of it, remains in doubt. Plaintiffs base their claim upon the fact that he at one time apparently had fee title to some land near Lake Winona.

In 1907 the case of Reed v. Board of Park Commrs. 100 Minn. 167, 110 N. W. 1119, was decided by this court, wherein we held that the city had acquired only an easement for park purposes in the property condemned. In 1965, in Buck v. City of Winona, 271 Minn. 145, 135 N. W. (2d) 190, we held that the city had no power to convey that easement. Plaintiffs claim that if and when the city vacates its interest there will be a reversion in fee to John Zenk's heirs and that plaintiff Clara Witzig, being the sole surviving heir of John Zenk, will gain the fee. Nothing, however, was introduced by plaintiffs at the trial by way of an abstract or other documentary evidence to establish John Zenk's ownership or that Clara Witzig was his sole surviving heir.

The trial court in a memorandum filed with his findings of fact, conclusions of law, and order for judgment in defendants' favor said:

"The plaintiff, Mrs. Witzig, in this case, claims that she is the successor in interest to her late father, John Zenk, in and to the property described in the complaint. The proof fell far short. The plaintiff did not prove that John Zenk owned the property at anytime nor did they prove that at the time of his death John Zenk owned any interest in this property, if he in fact had previously owned it. They did not prove that he died intestate. They did not prove that there had been a determination of his heirs by any court having jurisdiction of that subject, namely the probate court.

"The court got the impression that this was a lawsuit in which the plaintiffs had little confidence for the reason that they apparently were unwilling to spend even a small amount of money to properly present a case to the court. An abstract or a stub abstract could have been obtained which may have shown that John Zenk at one time had owned this property and that there were no conveyances out by him during his lifetime. If the estate of John Zenk had been probated and his interest in any property was omitted, between the time the action was commenced in August of 1964 and the date of trial, December 28, 1964, an amended decree of distribution could have been obtained which would have determined who was the successor in interest to John Zenk's real estate in Minnesota. If his estate was in fact not probated in this state, a decree

of descent could have been obtained at very little expense. While the plaintiffs took the trouble of bringing an appraiser from LaCrosse, Wisconsin, to Winona, Minnesota, they did not have a plat prepared by any competent person so that the appraiser could testify that he had examined the land in question and had an opinion as to its value. The nearest he came was an opinion of a larger tract which plaintiff claims incorporate[s] the land described in the complaint. Of course, this had no probative value.

"The proof of fraud fell short of a prima facie case."

The issues before us are whether plaintiffs' evidence was sufficient to make a prima facie case of fraud in the obtaining of the quitclaim deed by Brosnahan; whether it was sufficient to establish that plaintiff Clara Witzig is now the owner of a reversionary interest in the property described in the deed; whether Mrs. Witzig could testify directly as a fact that her father was or is now the fee owner of record; and whether Minn. St. 541.023 has in any way affected plaintiffs' claim to the fee title subject to the foregoing easement. The question finally remains whether lack of documentary proof to establish the foregoing title requirements has barred the plaintiffs from establishing a prima facie case of fraud.

■ The trial court was the trier of fact on the issue of fraud. We are not triers of fact. We have made it clear that, while this court must search the record to ascertain whether any erroneous rules of law have been applied, and act accordingly, it must on appeal consider the testimony in the light most favorable to the prevailing party. When an action is tried by a court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence. That rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708; Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660.

■ Appellants assert that in a suit for rescission for fraud no proof of damages is required, citing cases collected in 3A Dunnell, Dig. (3 ed.) § 1188. This is true, but it still is necessary that plaintiffs make out a

prima facie case of fraud. The burden of proof is, after all, on the party seeking to rescind or to obtain a cancellation on the grounds of fraud.

Appellants contend that Mr. Brosnahan's statement that the proposed motel would require 2 acres was misleading because the deed described more acres. However, the deed described the property in question; presumably appellants looked at it; and Brosnahan suggested that they could have their own attorney look it over. The record indicates that at the trial Clara Witzig testified, "We have about seven acres of land at this site." This could indicate an awareness of the acreage on her part. Whatever concealment appellants claim existed would have to be of a fact particularly within the knowledge of the person concealing it, and such concealment has not been shown. Appellants claim that Clara Witzig owns the land and make further claim that this was a fact particularly within the knowledge of Mr. Brosnahan. An examination of the record does not so indicate and fails to support this claim.

Appellants also contend that Mr. Brosnahan's statement that there was a defect in the title was a misrepresentation for the reason that appellants have a reversionary interest consisting of a fee subject to the city's easement for park purposes. They cite Reed v. Board of Park Commrs. *supra,* in support of that contention. The Reed case held that in the condemnation proceedings of 1906 the city had acquired only an easement for park purposes, but it did not hold that John Zenk had a fee interest in the property described in the deed. He was not a party in that case and was not mentioned in this court's decision.

Appellants also contend that Mr. Brosnahan made the statement that his clients had an option for 30 days on another piece of property; that this was not true; and that the statement was made to encourage appellants to sign the quitclaim deed. Brosnahan testified that he knew of no options other than the one which the defendants had obtained from the city. There is nothing in the record to indicate that the appellants relied on the statement they claim was made. Defendants argue that if appellants did rely on it they had ample time to check its veracity and that it could not have been the single determining factor in their signing the deed.

Appellants also contend that the statement that the land had little or no value was misleading; but Mr. Brosnahan may well have thought that

and may have given that impression. He nevertheless disclosed to appellants that defendants intended to use the land to locate and build a Holiday Inn Motel. Under those circumstances appellants could hardly claim that they were not free to surmise that such an undertaking might enhance the value of the land. It has no value to any fee owner so long as it remains subject to an easement for park purposes and it has already been established that the city as owner of the easement is not authorized to release such interest. Buck v. City of Winona, *supra.*

The offer of $100 for the deed was an offer made at arm's length and on a "take-it-or-leave-it" basis. Appellants were free to refuse it. While appellants contend that a confidential relationship came into existence between them and Mr. Brosnahan, he suggested that they call in their own attorney, which would seem to negative a confidential relationship.

It is well-established law that the defrauded party may testify directly as to the effect of the representations on his mind and whether or not he acted in reliance upon them. 8A Dunnell, Dig. (3 ed.) § 3838, and cases cited under note 1. Nevertheless the facts and circumstances surrounding the situation are the best measure of whether there was reliance or not. This court in Watson v. Gardner, 183 Minn. 233, 237, 236 N. W. 213, 215, said:

"* * * The testimony of a party that he relied upon representations made to him is at most only a statement as to his own mental reaction or state of mind. While he may directly so testify, such facts as intent, belief, and reliance are perhaps more cogently shown by the facts and circumstances surrounding a transaction and the acts of the parties in relation thereto."

Appellants cite Scheele v. Union Loan & Finance Co. 200 Minn. 554, 273 N. W. 673, and Langen v. Borkowski, 188 Wis. 277, 206 N. W. 181, 43 A. L. R. 622, to show that an attorney has an obligation to his client and to one with whom he has a confidential relationship. This assumes that there was a confidential relationship here. Appellants did not seek out Mr. Brosnahan and consult him (as was the case in Scheele). They appear to have had full knowledge of Mr. Brosnahan's mission be-

fore deciding to execute the quitclaim deed and accept the consideration therefor.

We conclude that the trial court correctly determined that plaintiffs' proof of fraud "fell short of a prima facie case."

■ The fact that John Zenk was in possession of an undetermined amount of land in 1906 does not necessarily mean that his daughter now has title, subject to the city's easement. Actual possession of realty is prima facie evidence of title in fee thereto. It is title of ownership and not mere evidence thereto as against everyone not showing a better title. But actual possession is required. 15 Dunnell, Dig. (3 ed.) § 7858.

Appellants cite Crane v. Veley, 149 Minn. 84, 182 N. W. 915, to show that possession is title, but that case was a suit to eject the defendants and they not only had actual possession but showed that plaintiff's title was based on a void deed. This case is entirely different. Appellants have never been in possession and it can only be considered here and now that John Zenk probably was in possession sometime in 1906, and up to the time the lands in which plaintiffs claim an interest were condemned for park purposes.

■ Appellants cannot now establish title by showing Zenk's possession in 1906 without evidentiary proof through documentary sources. They contend that it was error not to allow plaintiff Clara Witzig to testify that her father owned the property in question, citing Olson v. O'Connor, 9 N. D. 504, 84 N. W. 359. However, that case held that one can testify to ownership only where ownership is a question of fact. Here the question of ownership is a question of law. Therefore it was not error on the part of the trial court to rule that Clara Witzig could not testify that her father owned the land.

An abstract showing her father as the holder of a reversionary interest would be the best evidence of ownership and would be required in the instant case. The title to the land here is the crux of the lawsuit and it is clearly a question of law. As the trial court below pointed out, "[T]he court can't assume that just because a man has a daughter in 1964 and he owned an interest in some reversionary interest in 1904 that she automatically became the owner of that property." A stub abstract running back to 1903 or thereabouts brought up to date would furnish prima

facie proof of the title. Nothing of the kind was produced by the plaintiffs. They ought to have produced an abstract or other documentary proof in their attempt to put before the court proof of Zenk's title.

Appellants contend also that at John Zenk's death the property automatically transferred to Clara Witzig as his sole surviving heir. This might be so but it is not necessarily so. John Zenk may have conveyed it or devised it to someone else. Appellants rely on State Bank of Loretto v. Dixon, 214 Minn. 39, 44, 7 N. W. (2d) 351, 354, as establishing that a probate decree was not needed. In that case we said:

"* * * Upon the owner's death the title to his real estate passed immediately to his devisees * * * by operation of law and without a decree of court * * *."

That case does not help appellants since they presented no proof that Mrs. Witzig was a devisee. Under the circumstances here a court decree would be necessary to prove that Clara Witzig was the devisee of the land or acquired it as her father's sole heir at law.

Appellants cite Pound v. Pound, 60 Minn. 214, 62 N. W. 264, for the proposition that once ownership is proved to exist, it is presumed to continue until a change is proved. This principle requires that ownership be proved, which the record here does not sustain. The Pound case may also be distinguished because it involved specific personal property while this case involved real property which was not specifically described or located.

In the case at bar one of the questions before the court was whether the property had or had not been conveyed. The burden was on appellants to prove that the fee subject to the park easement was still in the name of John Zenk, something they failed to show. There was nothing upon which the court could base a finding as to the extent of the interest of Clara Witzig or the acreage of the property that she would get should the park easement be terminated.

Another question raised in this case is whether the appellants' title to the property was in any manner affected by Minn. St. 541.023. The record would indicate that John Zenk was apparently in possession until the condemnation proceeding in 1906. From 1906 until January 1, 1948,

he was not in possession. Whether or not § 541.023, which was construed by this court in Wichelman v. Messner, 250 Minn. 88, 83 N. W. (2d) 800, 71 A. L. R. (2d) 816, applies to this case will depend upon the evidence produced if and when the case is retried. Since appellants failed to make out a prima facie case of fraud, as the record now stands, the judgment to that extent should be and is affirmed. However, although appellants failed at the trial to prove the existence of and the ownership of the claimed reversionary interest in the lands involved, after a careful consideration of the entire record we have reached the conclusion that for the best interest of all parties concerned the appellants ought to have an opportunity to prove ownership of the claimed reversionary interest if it exists. If such rights are established by competent testimony, they may then have a determination of the standing of the quitclaim deed on grounds other than fraud, such as adequacy of consideration, unjust enrichment, and mutual mistake. It is upon that basis that we grant a new trial herein and, accordingly, remand the case for further proceedings.

Affirmed in part, reversed in part, and remanded for a new trial.