**STATE of Minnesota, Respondent,**

v.

**Daniel Carl TAYLOR, Appellant.**

No. 47347.

Supreme Court of Minnesota.

March 17, 1978.

C. Paul Jones, Public Defender, Robert E. Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, Chief, App. Div., David W. Larson and Phebe S. Haugen and Lee Barry, Asst. County Attys., Minneapolis, for respondent.

PER CURIAM.

Defendant was found guilty by a district court jury of a charge of making terroristic threats in violation of Minn.St. 609.713, and was sentenced by the trial court to a limited maximum term of 1 year and 1 day in prison. The sole issue on this appeal from judgment of conviction and from an order denying defendant's motion for a new trial is whether the trial court prejudicially erred in permitting the state to elicit on cross-examination of defendant that approximately 6 years earlier, when he was 20 years old, he had been convicted in Iowa of possessing marijuana.

While we agree with defendant that the crime arguably had very little relevance to the truth-seeking process or to defendant's credibility as a witness, we do not think this is a case like *State v. Stewart,* 297 Minn. 57, 209 N.W.2d 913 (1973), where the interests of justice warrant granting defendant a new trial on this ground.

We note in passing that the issue of impeachment by prior conviction is now governed by Rule 609, Rules of Evidence, effective July 1, 1977.

Affirmed.

SHERAN, Chief Justice (dissenting).

I would reverse this conviction and remand for a new trial. In order to understand the reasons for my position, it is helpful to sketch briefly the facts.

On May 14, 1976, just before midnight, Mrs. Laureen McElroy and her 4-year-old child were sitting in a car outside the Greyhound Bus Depot in Minneapolis waiting for her husband when she noticed a young man with long hair and a full beard enter the depot carrying an attache case and a textbook in a paper bag. Shortly thereafter he left the depot without his parcels and, according to Mrs. McElroy, walked over to her and said in a normal voice, "Don't go in there. There's a bomb in there." He then walked off.

Mrs. McElroy continued to wait in the car until her husband returned a few minutes

later. When she told him of the "threat," he reported the incident to the authorities. In the subsequent search of rental lockers the police found an attache case which Mrs. McElroy identified as the one she had seen. Inside were notes, some books in which the name Daniel Taylor was inscribed, and a calculator, but no bomb.

When the defendant returned to the depot the next day for his belongings, he was informed of the "bomb threat" and that the police had taken his attache case. He went to the station and retrieved his case and book. He was not arrested until May 25, 1976, 10 days later, after he was identified in a police lineup by Mrs. McElroy.

The defendant's recitation of events was different. After attending classes at Dunwoody Institute where he was a student, he spent some time playing pool in a bar on Hennepin Avenue rather than returning home with his books. In order to be able to dance at Zachariah's without worrying about the possible theft of his attache case which contained an expensive calculator and some very important notes, he decided to go to the bus depot and store them in a rented locker. After depositing his attache case and his book, he returned directly to Zachariah's without speaking to anyone. During all his communications with the police and other persons about the incident he steadfastly maintained that he had spoken with no one after leaving the terminal and had never made any bomb threat.

He was tried in district court for violating Minn.St. 609.713, subd. 2, which reads as follows:

"Whoever communicates to another *with purpose to terrorize another or in reckless disregard of the risk of causing such terror,* that explosives or an explosive device or any incendiary device is present * * * may be sentenced to imprisonment for not more than three years." (Italics supplied.)

The only evidence introduced linking defendant to the alleged crime was the testimony of Mrs. McElroy. The defendant then took the stand and repeated his story. On recross-examination by the prosecutor, defendant admitted, over objection by his attorney, that he had been convicted in Iowa of possession of 1½ ounces of marijuana approximately 6 years before. After deliberating only 1½ hours, the jury found him guilty as charged and he was sentenced to prison for 1 year and 1 day.

Defendant's only contention on appeal is that the admission of his prior conviction was prejudicial error. Our decisions reflect concern about evidence of this kind. See, *State v. West,* 285 Minn. 188, 173 N.W.2d 468 (1969); *State v. Stewart,* 297 Minn. 57, 209 N.W.2d 913 (1973); *City of St. Paul v. DiBucci,* 304 Minn. 97, 103, 229 N.W.2d 507, 510 (1975) (Scott, J., dissenting). The issue has now been resolved by Rule 609, Rules of Evidence, which became effective on July 1, 1977. Under Rule 609 the conviction at issue here would clearly be inadmissible since it was neither a serious crime nor a crime involving dishonesty or false statements.[1]

This case was tried before the Rules of Evidence went into effect. This does not necessarily mean, however, that evidence of the conviction was admissible. In West we recognized the trend toward admitting evidence of a conviction to attack a witness' credibility only if the crime involved dishonesty or false statement, but we refused to modify our rule that all crimes could be used for this purpose by the prosecution. We went on to note, however, that—

---

1. Rule 609 adopts the position taken by Mr. Justice Otis in his dissent in *State v. West,* 285 Minn. 188, 198, 173 N.W.2d 468, 474 (1969): "To perpetuate the myth that the disclosure of defendant's prior convictions has no effect on a jury beyond reflecting unfavorably on his credibility is, in my opinion, an abdication of judicial responsibility.

"It is our duty to guarantee defendant a fair trial. The legislature cannot constitutionally enact rules of evidence which deprive defendant of that right. * * *

"I cannot condone in perpetuity a law which so obviously and effectively denies defendant an opportunity to profess his innocence. In my opinion, the statute is simply a vestige of an era when the accused was prohibited from testifying on his own behalf for any purpose."

"the record in the instant case so overwhelmingly establishes the guilt of defendant that even though improper questions had been asked regarding the prior conviction, no prejudice requiring a reversal would have been likely to arise in the minds of the jurors." 285 Minn. 195, 173 N.W.2d 473.

This exception to the West rule served as the basis for a remand in Stewart. While the court again refused to modify its rule permitting the admission of all past crimes, it "expresse[d] grave doubts" about the use of the conviction (297 Minn. 59, 209 N.W.2d 915):

> " * * * The use of this old conviction * * * appears to have little relevance to the truth-seeking process or to the present character of the defendant. * * * It is impossible to determine what weight, if any, the jury ascribed to the prior conviction, but the interests of justice mandate a new trial for defendant without the burden of such irrelevant testimony."

In this case, as in Stewart, the evidence of defendant's past conviction was highly prejudicial, since it was probably improperly used by the jurors to discredit the defendant's version of the events of May 14. Moreover, unlike the situation in West, the evidence of defendant's guilt was hardly overwhelming. There was no independent corroboration of Mrs. McElroy's story; it was simply defendant's word against hers.

The error in admitting this evidence of defendant's past conviction takes on added significance in light of society's changing attitude toward the criminality of mere possession of marijuana.[2] Although a felony in Iowa in 1960, possession of 1½ ounces of marijuana, which is considered a "small amount" under Minn.St. 152.01, subd. 16, is only a petty misdemeanor in Minnesota today. Minn.St. 152.15, subds. 1(5) and 2(5). Since a petty misdemeanor is not really a crime, had his conviction for possession occurred when Minnesota's current laws were

in effect, it would not have been admissible under the reasoning of DiBucci. Thus, even prior to the new Rules of Evidence the "interest[s] of justice" (304 Minn. 101, 229 N.W.2d 509) would require a new trial at which this irrelevant evidence would be inadmissible.

Application of the Stewart rule is also warranted here because of the questionable propriety of charging and convicting defendant under the terroristic-threat statute. Although neither the question of the statute applicability nor the issue of whether the state sustained its burden of proof were raised in this appeal, when the interests of justice require, we can take judicial notice of errors in the proceedings below. *Rogers v. United States,* 422 U.S. 35, 41, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1, 7 (1975); *Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *Brotherhood of Carpenters v. United States,* 330 U.S. 395, 411, 67 S.Ct. 775, 784, 91 L.Ed. 973, 987 (1947).

> " * * * While ordinarily we do not take note of errors not * * * properly raised here, that rule is not without exception. The Court has 'the power to notice a "plain error" though it is not assigned or specified,' * * * [and] '[i]n exceptional circumstances, *especially in criminal cases,* appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.' " *Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1288, 8 L.Ed.2d 799. (Italics supplied.)

Such action is also within our scope of review as contemplated by Rule 103.04, Rules of Civil Appellate Procedure. See, also, *Witzig v. Philips,* 274 Minn. 406, 410, 144 N.W.2d 266, 269 (1966).

It is highly questionable whether the terroristic-threat statute should have been utilized by the prosecution in this situation.

---

**2.** The American Bar Association and the American Medical Association recently went on record in support of liberalization of marijuana laws. The presidents of both associations urged that "the possession of insignificant amounts [of marijuana] for personal use should not subject the user to criminal charges." 63 A.B.A.J. 1695.

Even assuming that defendant made the comment alleged, that would not necessarily be a terroristic threat. It might have been a flippant remark, or he may have been joking when he said it. Minn.St. 609.-713 is patterned after 10 U.L.A., Model Penal Code, § 211.3,[3] which was intended to punish "those who employ threats in circumstance[s] more serious than would be covered by petty offenses like disorderly conduct or breach of the peace." A.L.I., Model Penal Code (Tent. Draft 1960) § 211.-3, Comments. The drafters of this section clearly expected it to be construed strictly (ibid.):

> "In drafting legislation penalizing threats, we would not wish to authorize grave sanctions against the kind of verbal threat which expresses transitory anger rather than *settled purpose to carry out the threat or to terrorize the other person.*" (Italics supplied.)

Thus, they did not contemplate that it would be utilized to punish behavior that might consist of nothing more serious than a flippant remark or an outright joke.

Even if the statute were properly applied here, however, I do not believe that the state has proven all the elements of the crime beyond a reasonable doubt. In construing § 609.02, subd. 1, this court in *State v. Schweppe,* 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975), defined "purpose" in the context of "purpose of terrorizing another" as meaning aim, objective, or intention. See, also, § 609.02, subd. 9(3). A similar Kansas statute was held to require proof that defendant had a specific intent to terrorize another. *State v. Knight,* 219 Kan. 863, 866, 549 P.2d 1397, 1401 (1976); *State v. Gunzelman,* 210 Kan. 481, 486, 502 P.2d 705, 710 (1972). See, also, *Rogers v. United States,* 422 U.S. 35, 48, 95 S.Ct. 2091, 2099, 45 L.Ed.2d 1, 11 (1975) (Marshall, J., concurring); *Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664, 667 (1969), suggesting that a comparable Federal statute be so construed. Since the instructions given to the jury did no more than merely restate the words of the statute, the jury was never asked to determine whether this defendant had the specific intent to terrorize that was necessary to support a conviction.

Finally, a terroristic threat must be communicated directly to the intended victim or it must be reasonable for the speaker to assume that it will be relayed by the hearer. *State v. Schweppe, supra.* In the case before us the prosecution never demonstrated whom the defendant intended to terrorize. Was his aim to terrorize Mrs. McElroy, or the people inside the terminal? Since he did not know that her husband was inside, he could not have intended to terrorize her, and the jury was never asked to determine whether he should have expected his threat to be communicated to the depot authorities. In fact, the police bomb squad officer admitted on cross-examination that he had never heard of a bomb threat being made this way; such threats are always communicated directly either by telephone or by letter to personnel of the places threatened.

In light of the erroneous ruling on the admissibility of defendant's prior conviction for mere possession of a small amount of marijuana and the court's failure properly to charge the jury, defendant's conviction cannot stand. Thus, I would reverse and remand the case to the district court for a new trial.

OTIS, Justice (dissenting).

I join in the dissent of the Chief Justice.

ROGOSHESKE, Justice (dissenting).

I join the dissent of the Chief Justice.

WAHL, Justice (dissenting).

I join the dissent of Mr. Chief Justice Sheran.

---

**3.** *State v. Schweppe,* 306 Minn. 395, 398, 237 N.W.2d 609, 613 (1975).