**STATE of Minnesota, Respondent,**

v.

**Michael Ray MARCHAND, Appellant.**

**No. CX–87–157.**

Court of Appeals of Minnesota.

Aug. 25, 1987.

Review Denied Oct. 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Mark S. Rubin, Asst. County Atty., Duluth, for respondent.

C. Paul Jones, State Public Defender, Steven P. Russett, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Michael Ray Marchand was convicted of making terroristic threats in violation of Minn.Stat. § 609.713, subd. 1 (1986). On appeal he argues that the evidence does not support the conviction, that the trial court abused its discretion in sustaining the prosecutor's objections to certain defense questions and the trial court erred in its instructions to the jury. We affirm.

## FACTS

Appellant had a leg amputated as the result of a motorcycle accident, and repeatedly parked his car in front of his business on a main traffic artery in downtown Duluth. He could not park at the rear of the store because he was unable to walk up and down the steps near the rear entrance. The area in front of the store is a "no parking" zone, and in the month preceding the incident which precipitated the charge and conviction now on appeal, appellant had received nearly 20 parking citations and his car had been towed six times.

On the day of the incident, he had again parked in the "no parking" zone as he unloaded his car. Within a few minutes, he left his store intending to move the car. However, the police had already been summoned and had called a tow truck. Complainant Debra Nephew is the wife of the owner of the towing firm. Appellant became very upset and argued with the police officers who refused to allow him to remove the car. Eventually, six officers were involved in the dispute with appellant.

After the tow truck arrived and the car was removed, appellant took a cab to the police station to obtain the towing slip. He was required to wait about 30 minutes at the station and again became extremely upset. After receiving the towing slip, he directed the cab driver to the address on the slip, which was about 90 blocks from

the police station. Unknown to appellant, the address was that of the residence of the Nephew family. Ms. Nephew had been phoned by the cab company and had told the caller that the car was not at the address on the slip. This information was not relayed to appellant.

When appellant arrived at the Nephew home and discovered his car was not there, he again became very upset. He left the cab, approached the window of the home and began yelling at Ms. Nephew. Ms. Nephew states that appellant slammed his fist on a garbage can as he yelled. She testified that:

> [H]e said that he was handicapped. We had no right doing that to him, and that he was with the Hell's Angels, and that; and then he told me that we—I would pay for towing—We would pay for towing his car, that we didn't have a right to do that. He kept telling me that we didn't have a right to do that and we would pay for it. He said "I know where you live and I know what kind of vehicles you have, and if I ever see you on the road I'll run your asses right off the road."

Appellant testified that he told Ms. Nephew she and her husband had no right to tow a handicapped person's car and that he was a former member of the Hell's Angels. He denies stating that he would run the Nephews off the road. Instead, he states that he told her he would run the family out of town. Appellant acknowledges that he was yelling at Ms. Nephew as loud as he could during the incident, but contends that he intended only to cause her to refuse to tow his car in the future, not to terrorize her.

Appellant was charged with making terroristic threats and the jury returned a verdict of guilty to the charge.

## ISSUES

1. Is there evidence to support the conviction, showing that appellant intended to terrorize the complainant?

2. Did the trial court abuse its discretion in sustaining objections to defense questions?

3. Did the trial court commit reversible error in its instructions to the jury?

## ANALYSIS

### I.

■ Minn.Stat. § 609.731, subd. 1 (1986) provides:

> Whoever threatens to commit any crime of violence with purpose to terrorize another * * * or in a reckless disregard of the risk of causing such terror * * * may be sentenced to imprisonment for not more than five years.

In the context of this statute, "purpose" means "aim, objective or intention." *State v. Schweppe*, 306 Minn. 395, 398, 237 N.W.2d 609, 614 (1975). Appellant argues that there is insufficient evidence of intent to support the jury's verdict.

This court is mindful of the directive that it is not to try the facts anew when considering an appeal of a jury's finding of guilt. *State v. Ellingson*, 283 Minn. 208, 211, 167 N.W.2d 55, 57 (1969).

> Our responsibility extends no further than to make a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt is sufficient to permit the jury to reach that conclusion.

*Id.* Ms. Nephew's testimony that appellant threatened to run her off the road constitutes a threat to commit a crime of violence, one of the elements that must be shown under Minn.Stat. § 609.713, subd. 1. Appellant's argument on appeal centers on his contention that the evidence does not show beyond a reasonable doubt that he intended to terrorize Ms. Nephew when making the threat. Rather, he contends that his statements were merely expressions of transitory anger. He relies on a dissenting opinion in *State v. Taylor*, 264 N.W.2d 157 (Minn.1978), which quotes from the comments to the section of the Model Penal Code upon which the Minnesota statute is patterned:

> In drafting legislation penalizing threats, we would not wish to authorize grave

sanctions against the kind of verbal threat which expresses transitory anger rather than settled purpose to carry out the threat or to terrorize the other person.

*Id.* at 160. Although a dissenting opinion, the analysis of the intent issue is not contradicted by the majority opinion; it relates to an issue not addressed by the majority.

However, to warrant reversal based on appellant's argument, this court must find that the evidence indicates he acted not out of an intent to terrorize but rather in the midst of transitory anger. While the effect of a terroristic threat on the victim is not an essential element of the offense, the victim's reaction is circumstantial evidence relevant to the element of intent. *Schweppe,* 306 Minn. at 401, 237 N.W.2d at 614. Although Ms. Nephew became very fearful, appellant continued yelling at her.

Appellant also testified regarding his intent:

Q. My question is, is it your testimony that you did not mean to frighten that woman when you were yelling at her?

A. Yes, sir; I did not mean to frighten her.

Q. You didn't think that might cause this woman to be afraid of you when you were yelling at her?

A. Well, just to be afraid not—just to leave my car alone and not tow it. Not—not to harm her.

Q. You wanted her to be afraid to touch your car again, correct?

A. Yes.

This portion of the transcript shows that appellant did intend to cause the Nephews to fear towing his car in the future. Consequently, there is evidence that appellant acted with intent and not merely out of transitory anger. Viewed in the light most favorable to support the jury's finding of guilt, we conclude that this evidence of intent is sufficient to permit the jury to reach that conclusion.

## II.

■ Appellant contends that the trial court improperly sustained the state's ob-

jections to three questions. During the cross examination of Ms. Nephew, the court prohibited her from answering whether she could see, while appellant was at her residence, that he was in no position to carry out any threats and whether appellant has ever driven her off the road or tried to do so. During direct examination of appellant, the trial court sustained an objection to a question asking if appellant had every apologized to Ms. Nephew for the statements he made to her.

Appellant asserts that the questions relate to his intent to carry out the threat, a question not addressed in *Schweppe.* He relies on this language:

Defendant has not raised, and the parties have not briefed, the issue of whether a defendant charged under Minn.Stat. 609.-713, subd. 1, must have the actual intent of carrying out the threat *at the time that the threat is made.* We therefore do not consider or decide the question.

306 Minn. at 401 n. 3, 237 N.W.2d at 614 n. 3 (emphasis added). Even if this court were to address the issue left unanswered in *Schweppe,* intent must clearly be determined at the time that the threat is made. However, none of the questions addressed by appellant relates to evidence of his intent at the time the threat was made. At the time appellant threatened to run Ms. Nephew off the road, he did not have a car and she was not traveling on a road. Any action on the threat to run her off the road would have to take place in the future. Therefore, her perception of his ability to carry out the threat would relate to her belief that at some time in the future he would be able to carry it out. Likewise, the question regarding whether appellant ever attempted to run her off the road would clearly relate to a later time. Similarly, any subsequent apology by appellant would be irrelevant to his intent at the time he made the threats. The trial court properly excluded the evidence.

## III.

■ The trial court instructed the jury on one of the elements of the offense charged:

Second, the [appellant] made the threat with the intent to terrorize another person, and in this case the other person is Debra Nephew. Now, to terrorize means to cause extreme fear. With intent to terrorize means to have the specific purpose or intention of causing fear.

Appellant argues that the trial court committed prejudicial error by failing to instruct that "with intent to terrorize means to have the specific purpose or intention of causing *extreme* fear." That is the wording used in 10 Minnesota Practice, CRIM. JIG, 13.42 (1986).

Appellant did not object to the instruction at trial.

Ordinarily, where no objection is made to the jury instruction, the alleged error must be one of fundamental law or controlling principle, and it must substantially and materially prejudice the defendant's rights.

*State v. Johnson,* 374 N.W.2d 285, 287 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985). The failure to repeat the word "extreme" in the instruction does not constitute reversible error, particularly when the trial court in the preceding sentence instructed that "to terrorize means to cause extreme fear."

### DECISION

There is sufficient evidence to support the verdict, the trial court did not abuse its discretion in excluding evidence and the court did not commit reversible error in its jury instructions.

Affirmed.