**STATE of Minnesota, Respondent,**

**v.**

**Marvin Lee JONES, Appellant.**

**No. CX–89–1054.**

Court of Appeals of Minnesota.

Jan. 30, 1990.

Review Denied Feb. 21, 1990.

Hubert H. Humphrey, III, State Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Richard M. Arney, Washington County Atty., Stillwater, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by KALITOWSKI, P.J., HUSPENI and GARDEBRING, JJ., without oral argument.

OPINION

HUSPENI, Judge.

Appellant alleges that his convictions for making terroristic threats must be reversed because the trial court precluded him from raising the defense of selective prosecution, erroneously refused to instruct a jury and erroneously refused to continue the matter. Appellant also alleges that the evidence is insufficient to support his convictions and that the trial court

erred by imposing consecutive sentences. We affirm in part, reverse in part and remand.

## FACTS

On November 30, 1988, correctional counselor Timothy Parkos conducted a security check of the correctional facility area where appellant, Marvin Lee Jones, was then staying. According to Parkos,

> [appellant] advised me that when he was released in approximately three months that he was going to find me, and when he did he was going to cut my throat.

Parkos testified that during a later security check of the area, appellant told him

> that when he [appellant] got out he was going to find me and fuck me up, and he was going to find my family and fuck my family up.

Upon seeing counselor Dan Moris, appellant allegedly yelled:

> You dirty ass maggot mother fucker, you're dead meat. I get out of here in three months and you're dead. You're the first one on my list.

On January 4, 1989, as Constance Bush approached appellant with coffee, Bush testified that appellant told her "get the fuck away from me with that coffee, Connie Bush" and that as she moved away appellant yelled at her "I'm going to kill you when I get out of this place."

The next evening appellant allegedly threatened Bush, stating:

> Yeah, Connie Bush, I have 79 days left before I get out of here. And when I do, I'm going to come and find you and I'm going to fuck you up big time. I'm going to come and find you and I'm going to rape you * * * I'm going to take a sawed off baseball bat and I'm going to fuck you up the ass because I got 79 days left, you fucking bitch.

Each event was named in a single four count terroristic threats complaint. Appellant pleaded not guilty and moved for dismissal based on selective prosecution at the omnibus hearing. Appellant's motion was denied.

The court granted appellant's motion to continue the date set for trial to enable appellant to retain private counsel. Also, appellant's motion to reopen the issue of selective prosecution based on new evidence was deferred to the judge presiding at trial.

On the continued trial date of April 10, 1989, the selective prosecution issue was not reopened. Also, while appellant's request for a second continuance was denied, his request to have the charges severed for trial was granted. Further, because appellant was appearing pro se, the trial court required the presence of stand-by defense counsel.

At the trial on the events of January 5, 1989, appellant was allowed to make limited testimony on the selective prosecution issue. Additionally, one of appellant's three inmate witnesses, Dean Rieck, stated that appellant was often the object of taunts and abuse by the prison staff. All three of appellant's inmate witnesses indicated that they had made threats and not been prosecuted in district court but had been handled in the prison's disciplinary system. A jury convicted appellant on April 12.

Trial on the events of January 4, 1989, commenced April 17, 1989. Appellant did not testify. He was convicted on April 18, 1989. Trial on the events of November 30, 1988, started the next day. Appellant called two of the defense witnesses from the first trial who testified that appellant was harassed by members of the prison staff including Moris. Appellant was convicted on April 20, 1989.

At each trial, *Spreigl* evidence of the threats for which appellant was not being tried was admitted. The *Spreigl* evidence included the events involving Moris even though that count of the complaint was eventually dismissed.

## ISSUES

1. Did the trial court erroneously preclude appellant from raising the defense of selective prosecution?

2. Does the trial court's refusal to clarify jury instructions require reversal?

3. Did the trial court abuse its discretion in refusing to continue appellant's trials?

4. Was the evidence sufficient to support appellant's convictions?

5. Did the trial court err by imposing consecutive sentences?

## ANALYSIS

### I.

Generally, "[T]he equal protection clause of the Fourteenth Amendment forbids the discriminatory enforcement of nondiscriminatory laws." *City of Minneapolis v. Buschette,* 307 Minn. 60, 64, 240 N.W.2d 500, 502 (1976).

> The issue of discriminatory enforcement should be decided prior to a trial on the merits because "it does not go to the guilt or innocence of the particular defendant."

*State v. Hyland,* 431 N.W.2d 868, 873 (Minn.Ct.App.1988) (quoting *Buschette,* 307 Minn. at 66, 240 N.W.2d at 503).

> [T]o trigger a pretrial hearing, a defendant must allege sufficient facts to take the question past the frivolous state and raise a reasonable doubt as to the prosecutor's purpose.

*Hyland,* 431 N.W.2d at 873. Further,

> If discriminatory enforcement is proven at the pretrial hearing, the case should be dismissed. If discriminatory enforcement is not proven at the pretrial hearing, the case should proceed to trial on the merits. Regardless of whether discriminatory enforcement is shown at the pretrial hearing, consideration of discriminatory enforcement evidence at trial is *inappropriate.*

*Id.* (emphasis added).

Regarding discriminatory enforcement, the Supreme Court has noted that "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute" and that "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). Additionally, this court has stated that "[c]riminal prosecutions * * * are presumed to have been undertaken in good faith and in a nondiscriminatory manner." *Hyland,* 431 N.W.2d at 872.

Generally,

> so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute * * * generally rests entirely in his discretion.

*Wayte,* 470 U.S. at 607, 105 S.Ct. at 1530 (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). However,

> although prosecutorial discretion is broad, it is not " 'unfettered.' Selectivity in the enforcement of criminal laws is * * * subject to constitutional constraints." [Therefore] the decision not to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531 (quoting *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) and *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668) (other citations omitted).

Under *Wayte,* parties attempting to show discriminatory enforcement must "[demonstrate] both that the [alleged discriminatory enforcement] had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.,* 470 U.S. at 608, 105 S.Ct. at 1531. Further,

> " 'Discriminatory purpose' * * * implies more than * * * intent as awareness of consequences. It implies that the decision maker * * * selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group."

*Wayte,* 470 U.S. at 610, 105 S.Ct. at 1532 (quoting *Personnel Administrator of Mas-*

sachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)).

Under *Hyland:*

> a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion or the desire to prevent his exercise of a constitutional right.

*Hyland,* 431 N.W.2d at 872–73 (quoting *State v. Russell,* 343 N.W.2d 36, 37 (Minn. 1984)).

Because the effect of discriminatorily enforcing a law will be to single out certain persons for prosecution under that law, we see the "discriminatory effect" prong of the *Wayte* test as analogous to the "singled out for prosecution" prong of the *Russell/Hyland* test. Similarly, *Wayte*'s requirement of "discriminatory purpose" involving a course of action engaged in "because of" its adverse effects upon an identifiable group is as parallel to the "invidious" or "bad faith" element of the prosecution required under the *Russell/Hyland* test.

On the original trial date, appellant informed the judge that he had additional evidence on the selective prosecution issue, consisting of similar incidents that were not charged in district court and certain rules stating that the prison would not prosecute inmates for making threats. Upon hearing this and allowing the continuance for appellant to retain private counsel, the judge deferred to the trial judge appellant's motion to reopen the selective prosecution issue, stating:

> The motion would be to reopen a previously ruled on motion. [The omnibus judge] has ruled on this, so the trial judge can determine if he or she wishes to hear additional evidence at that time. You have to bring it in evidentiary form.

On the morning of the continued trial date, appellant, proceeding pro se and not consulting with stand-by counsel, presented no information or documentation to the court regarding the prison rules. Appellant's attempt to subpoena witnesses and records for his selective prosecution "defense" was denied. The trial court, evidently aware of the omnibus ruling refusing to consider the selective prosecution defense but not aware of the subsequent ruling deferring to the trial court appellant's motion to reopen the issue, stated "if you want to appeal [the omnibus] ruling you have to go to the Court of Appeals." [1]

On appeal, appellant argues

> Neither [appellant's omnibus counsel] nor his law partner had personal knowledge of any other inmate ever having been prosecuted as the result of threats while incarcerated * * *. Clearly this assertion was sufficient to raise a reasonable doubt as to the propriety of the

1. The confusion regarding exactly what was before the trial court is demonstrated by the following colloquy which occurred when appellant sought to use the selective prosecution "defense":

> THE COURT: Mr. Jones, I'm not a Court of Appeals and I can't reverse [the omnibus] ruling. You will have to go to the Court of Appeals.
> THE DEFENDANT: Why don't you just take a look at the evidence I have here?
> THE COURT: I can't because I'm not a Court of Appeals. I just have no jurisdiction to reverse anything that [was ruled on at the omnibus hearing]—
> THE DEFENDANT: No, what I'm saying is that there should be an evidentiary hearing to go over my evidence on this claim.
> THE COURT: But I can't.
> THE DEFENDANT: Because there is really no need for a trial.
> THE COURT: Well, I can't review [the omnibus] ruling. After this trial is over, if you are convicted, you can appeal, and then the Court of Appeals, if they tell us we're wrong, can tell us that [the omnibus ruling] was wrong, then it comes back for a new trial.
> But I'm just not a Court Appeals. I just can't change his ruling. So we're stuck with that. You're stuck [with it] and I'm stuck with it, and that's what we're going to have to do.

Similar exchanges took place prior to each of appellant's other two trials.

prosecution and the omnibus court was remiss in failing to hold an adversary hearing on this issue.

While we agree that the trial court was technically in error in not reconsidering the selective prosecution issue, we are not convinced that this error requires a reversal in this case.

In *Hyland* discriminatory enforcement was argued because only Hyland received tickets under the questioned ordinance while other violators did not.

> In anticipation of a pretrial hearing, Hyland gathered evidence which he claim[ed] indicate[d] discriminatory enforcement. Specifically Hyland recorded instances where vehicles were parked in violation of the ordinance, but the owners had not been issued a citation. * * * Hyland also prepared for establishing discriminatory enforcement by issuing subpoenas to the law enforcement officers responsible for the citations.

*Hyland,* 431 N.W.2d at 870. This court stated:

> Hyland merely made a general, conclusory allegation that discriminatory enforcement occurred. However, Hyland implied in his motion to dismiss that he was the only one ever ticketed under the ordinance. * * * Even if Hyland's allegation was sufficient to make his claim of being singled out not frivolous, Hyland did not allege facts that show any singling out was invidious or in bad faith. Specifically, the facts alleged by Hyland did not show that he is a member of a suspect class, that he was exercising a fundamental right, or that any intentional, deliberate or systematic singling out occurred. Thus, Hyland's claim of discriminatory enforcement was frivolous because his conclusory allegations did not state that any singling out was invidious or in bad faith.

*Id.,* 431 N.W.2d at 873 (citation omitted). The allegations of bad faith made on behalf of appellant are similar to those present in *Hyland.* Where Hyland indicated that he was the only one ticketed under the ordinance for his violations, appellant maintains that he was the only one prosecuted in district court for his offenses. As such, the pretrial confusion regarding appellant's attempts to argue discriminatory enforcement is harmless.[2]

II.

█ The state argues that, because at appellant's first trial appellant failed to object to the trial court's refusal to give the jury clarifying instructions regarding the use of *Spreigl* evidence, the issue may not be raised on appeal.

Generally an item not objected to in the trial court will not be addressed on appeal. Additionally,

> [t]he forfeiture rule applies equally to a criminal defendant who rejects representation by the public defender and represents himself.

*State v. Rean,* 421 N.W.2d 303, 306 (Minn. 1988). However,

> [p]lain errors or defects affecting substantial rights may be considered by the court * * * on appeal although they were not brought to the attention of the trial court.

Minn.R.Crim.P. 31.02 (1988). *See also State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983).[3]

The rules state:

> 1. * * * The court shall give appropriate additional instructions in response to the jury's request [therefor] unless: (a) the jury may be adequately informed by directing their attention to some portion

2. To the extent that appellant's pro se supplemental brief included a copy of the rule mentioned in but not presented to the trial court, regarding prison procedures for handling threats, this court, in a hazardous waste context, has observed that "The fact that the criminal sanctions provided by [statute] have not been widely employed does not constitute discriminatory enforcement." *State v. McAllister,* 399 N.W.2d 685, 690 (Minn.Ct.App.1987). Additionally, we were cited to no authority indicating that a county attorney's prosecutorial discretion is limited by a prison's internal rules.

3. Appellant's claim regarding the *Spreigl* evidence instruction may be addressed without reaching the issue of whether fundamental law or controlling principle is involved.

of the original instructions; (b) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or (c) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

Minn.R.Crim.P. 26.03, subd. 19(3).

Regarding *Spreigl* evidence, the court used CRIM. JIG 3.16 and instructed the jury:

> as I told you at the time this evidence was offered, it was admitted for the limited purpose of assisting you in determining whether the Defendant committed the crime with which he is charged in the Complaint that I read you.
>
> The Defendant is not being tried for and may not be convicted of any crime other than the crime with which he is charged in the Complaint.
>
> You are instructed specifically that you are not to convict the Defendant on the basis of any occurrence on November 30th of 1988, December 14th of 1988, and January 4th of 1989.

The jury was given a written copy of its instructions.

Regarding this instruction, the court of appeals has stated

> the CRIM. JIG might be confusing to a jury because the instruction first suggests that the evidence may be used to determine guilt, and then implies that it cannot be used as a basis for convicting the defendant. It would seem preferable to say * * * that the other conviction[s] may not serve as the *sole* basis for the conviction.

*State v. Haala*, 415 N.W.2d 69, 77 n. 2 (1987), *pet. for rev. denied* (Minn. Dec. 22, 1987) (emphasis in original). The 1989 version of CRIM. JIG 3.16 uses the word "solely" per *Haala.*

Here, the jury had the same problem with the instruction that was noted in *Haala.* The trial court, however, denied the jury's request for clarifying instructions. Generally,

> The trial judge is in the best position to decide what instructions are necessary to the jury's decision, and [the trial judge's] discretion must be respected.

*State v. Link*, 289 N.W.2d 102, 107 (Minn. 1979). Further, "[t]he test in finding reversible error is whether the error affected the outcome of the case." *State v. Rean*, 420 N.W.2d 680, 684 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. April 20, 1988). While *Haala* indicates that the instruction could be clearer, *Haala* does not state that the instruction is so fundamentally flawed as to be unclear as a matter of law. The trial court has broad latitude regarding jury instruction and reinstruction. Further, appellant was convicted of two of the three events used as *Spreigl* evidence. We find no abuse of the trial court's discretion.

III.

Appellant argues that the trial court's failure to continue his trials denied him due process because he was deprived of the right to prepare and present an effective defense. We disagree.

The Supreme Court has stated:

> broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)). Also,

> [t]he granting of such a continuance is a matter within the trial judge's discretion, and [the] decision should be based on all the facts and circumstances surrounding the request.

*State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977).

In reviewing continuances,

> a conviction will not be reversed for denial of a motion for a continuance except when such denial is a clear abuse of discretion.

*State v. Rainer*, 411 N.W.2d 490, 495 (Minn.1987).

In determining whether the trial court was within its sound discretion in deny-

ing a motion for a continuance, [an appellate court] looks to whether the defendant was so prejudiced in preparing or presenting his defense as to materially affect the outcome of the trial.

*Vance,* 254 N.W.2d at 358–59. Also, because

[i]nsufficient preparation has been the ground for finding ineffective assistance of counsel * * * [w]hen denial of a continuance deprives defendant's counsel of adequate trial preparation, [an appellate court] must reverse the conviction.

*In re Welfare of T.D.F.,* 258 N.W.2d 774, 775 (Minn.1977).

APRIL 10, 1989 REQUEST FOR A CONTINUANCE

On the morning of March 27, 1989, the original date for trial, appellant requested and was granted a continuance to obtain private counsel. Trial was reset for April 10, 1989. On April 10, appellant informed the trial judge that he had waived his right to a speedy trial, and he wanted an additional continuance because the public defender with whom he worked to that point had hampered the development of his case. The trial court refused appellant's request for a continuance and required that stand-by counsel be present during the proceedings.

Appellant had already had a two-week continuance and he failed to indicate why or how his case had been hampered by the public defender. Further, the stand-by counsel did not claim to be unprepared. Such circumstances do not present a clear abuse of discretion that was so prejudicial that it materially affected the outcome of the trial.

APRIL 17 AND 19, 1989 REQUESTS FOR CONTINUANCES

All charges were originally to be tried together. On the mornings of appellant's second and third trials, appellant was represented by an attorney and requests for continuances were again denied. If the trial court did not err in failing to continue the first trial, it did not err in failing to continue the two subsequent trials.

In making a request for a continuance, counsel stated:

the [appellant] at this time would move the Court for a continuance of this matter because *he indicates to me* that he is not totally prepared to proceed to trial

(emphasis added). Counsel's requests for continuances of the second and third trials were based on appellant's alleged unpreparedness for trial, not counsel's. Counsel represented appellant in these cases. The persuasiveness of a request for a continuance based on a party's alleged unpreparedness is slight. Here there was no statement by counsel that he, counsel, was unprepared for trial.

Even assuming that counsel's requests were a euphemistic reference to his own unpreparedness, appellant's argument fails. "A defendant must *show* prejudice to justify reversal." *Rainer,* 411 N.W.2d at 495 (emphasis added). In this case the requests for a continuance beyond the original continuance of two weeks were simply made and denied. In *Rainer,* 411 N.W.2d at 495, the supreme court stated:

defense counsel received [the evidence upon which a continuance request was based] thirteen days before the beginning of *defendant's case.* While counsel was busy with the pre-trial *Spreigl* hearing and the trial, * * * this [was] not [an] impossibly tight time schedule * * *. Furthermore, *the defense did not make an offer of proof of prejudice. Abuse of discretion was not established.*

(Emphasis added.) Appellant had already had one two-week continuance; there had been prior trials involving the same evidence; and no offer of proof was made. These circumstances do not clearly "show" or "establish" prejudice.

IV.

■ The crime of committing terroristic threats is defined as:

[threatening] to commit any crime of violence with [the] purpose to terrorize another * * * or in a reckless disregard of the risk of causing such terror * * *

Minn.Stat. § 609.713, subd. 1 (1988). To "terrorize" means "to cause extreme fear

by use of violence or threats." *State v. Schweppe,* 306 Minn. 395, 399, 237 N.W.2d 609, 614 (1975). Also,

> the question of whether a given statement is a threat turns on whether the "communication 'in its context' would 'have a reasonable tendency to create the apprehension that its originator will act according to its tenor.' "

*Schweppe* at 401, 237 N.W.2d at 613 (citation omitted). Further, "[i]ntent, of course, is a subjective state of mind usually established only by reasonable inference from surrounding circumstances." *Schweppe* at 401, 237 N.W.2d at 614 (citations omitted). However, "[a] victim's reaction is circumstantial evidence relevant to the element of intent." *State v. Marchand,* 410 N.W.2d 912, 915 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Oct. 21, 1987).

In reviewing a sufficiency of the evidence claim, an appellate court must determine

> whether, given the facts in the record, and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged * * *. [An appellate court] must take the view of the evidence most favorable to the state and assume the jury believed the state's witnesses and disbelieved any contradictory evidence. * * * If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978). Additionally, resolution of conflicts and inconsistencies in testimony are the exclusive function of the jury. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980). Appellant alleges that a review of the record

> establishes indubitably that in the context that [the threats were made] that they were not made with the purpose of terrorizing Ms. Bush or Parkos and that these statements did not have a reasonable tendency to create [the] apprehension that appellant would act according to their tenor.

Comment to the relevant section of the Model Penal Code, upon which Minnesota's terrorist threats statute is based, indicates that it is not the purpose of the statute "to authorize grave sanctions against the kind of verbal threat which expresses *transitory anger*" which lacks the intent to terrorize. 10 U.L.A. Model Penal Code, § 211.3. (Tent. Draft 1960) § 211-3 Comments (emphasis added); *see generally State v. Taylor,* 264 N.W.2d 157, 159–60 (Minn.1978) (Sheran, C.J., dissenting).

In this case at the trials and associated *Spreigl* hearings Parkos testified that appellant's tone of voice when making the threats was "very threatening, as I took it," that he took the event "[a]s a very serious incident" and that he felt "[v]ery seriously threatened [by appellant's comments] due to the fact that appellant was going to be released in three months."

Bush testified in a similar manner stating that appellant's comments of January 5, 1989, left her "very frightened," and "unnerved." Regarding the events of January 4, 1989, Bush testified that she felt "very threatened and frightened and intimidated" and that she "feared for [her] life because [appellant's] expiration date was coming up soon."

Considering the deference allotted the jury under *Merrill* and *Pieschke,* and the circumstantial evidence of intent, it would be possible for a reasonable jury to conclude that appellant was not expressing "transitory anger" when he threatened Parkos and Bush, but that when doing so he had the requisite intent to terrorize necessary to support his conviction.[4]

V.

Appellant argues

4. We cannot accept as justifying or excusing his behavior appellant's argument that:

> Although in an ideal society correctional counselors would never be subjected to such verbal outbursts, such outbursts do occur and are a fact of life for anyone who chooses that profession.

that the imposition of consecutive sentences upon him exaggerated the criminality of his conduct and that in any event imposition of consecutive sentences in regard to the crime allegedly committed against Ms. Bush constituted a sentencing departure.

Under sentencing guideline II.F:

> When an offender is convicted of multiple current offenses, * * * concurrent sentences shall be given in all cases not covered below. The most severe offense among multiple current offenses determines the appropriate offense severity level for purposes of determining the presumptive guideline sentence.
>
> Consecutive sentences may be given only in the following cases:
>
> * * * * * *
>
> 2. When the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines;

Further, while the comments explain application of the guideline's "different person" requirement to domestic and sexual abuse situations, *see* comment II.F.06, the supreme court recently noted that "[s]ection II.F.2 itself makes no exception to the ["different persons"] requirement." *State v. Notch,* 446 N.W.2d 383, 385 (Minn.1989). In *Notch,* the victim ordered her former live-in boyfriend out of her home. As a result of subsequent incidents occurring a week apart, Notch was convicted of burglary and false imprisonment. Both cases involved the same victim. The trial court imposed consecutive sentences and this court affirmed.

The supreme court, however, quoting the comments and concluding that

> the acts of defendant fall within the category of "domestic abuse," since they were occasioned by the breakup of defendant's live-in and fairly long-standing relationship with the victim,

*id.* at 386, stated:

> Because the acts underlying the two offenses fall within the category of "domestic abuse," we think that the comment supports our conclusion that II.F.2. does not authorize consecutive sentences in this case. However, even if the comment were otherwise, we would be reluctant to conclude that II.F.2. authorizes consecutive sentencing in this case. This is because II.F.2. itself is clear and unambiguous and makes no exceptions to the "different persons" requirement.

*Id.*

The supreme court emphasized that the guideline makes no exception to the "different persons" requirement. We believe, therefore, in this case that the trial court should not have given appellant consecutive sentences for his separate threats against Bush.

Under II.B.101 of the sentencing guidelines,

> when multiple current offenses are sentenced on the same day before the same judge, sentencing *shall* occur in the order in which the offenses occurred.

(Emphasis added.) Appellant argues that because he was sentenced in reverse chronological order, the guidelines require a remand. The state agrees. Therefore, we remand this case to the trial court for resentencing consistent with the rules.

Finally, we have reviewed the issues raised by appellant's pro se supplemental brief and to the extent they are not mentioned above, we find them to be without merit.

## DECISION

While the confusion regarding the issues before the trial court resulted in the trial court's failure to address the selective prosecution issue, that error does not mandate reversal of appellant's conviction because of appellant's conclusory allegations of discriminatory enforcement. Further, the trial court's refusal to readdress the jury instructions and its failure to grant a second continuance were not abuses of discretion. The evidence was sufficient to support appellant's convictions. Because the trial court erred in imposing consecutive sentences for appellant's threats against a single complainant, we must remand for

resentencing consistent with the relevant guidelines and case law.

Affirmed in part, reversed in part and remanded.